DECISION
{¶ 1} Relator, Ford Motor Company, commenced this original action seeking a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order granting permanent total disability ("PTD") compensation to respondent Donald W. Dunmyer, Sr. ("claimant") and to enter an order denying said compensation.
 {¶ 2} Pursuant to Civ.R. 53 and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In his decision, the magistrate determined that the report of Dr. Juan M. Hernandez was some evidence supporting the award of PTD compensation.
 {¶ 3} Relator has filed objections to the magistrate's decision arguing that Dr. Hernandez considered nonmedical disability factors, and thereby rendered an opinion on disability rather than impairment. We disagree. As the magistrate points out, although Dr. Hernandez does mention some nonmedical factors in his report, Dr. Hernandez spends considerable time detailing the claimant's surgical history for bilateral carpal tunnel syndrome. Dr. Hernandez's detailed description of claimant's impairment of his wrists and hands following repeat surgeries indicates that Dr. Hernandez's ultimate opinion was not based on nonmedical disability factors. His opinion that the claimant is permanently and totally disabled from any form of gainful employment was based solely on the allowed condition.
 {¶ 4} Relator also argues that the magistrate failed to address whether the report of the state specialist, Dr. Daniel Collins, was ignored by the staff hearing officer in finding that the claimant was permanently and totally disabled. Although relator correctly points out that the magistrate did not address this issue, it is well-established that the commission must cite in its orders the evidence on which it relied in reaching its decision. State ex rel. Mitchell v. Robbins Myers, Inc.
(1983), 6 Ohio St.3d 481. However, the commission is not required to enumerate all evidence it considered. State ex rel. Lovell v.Indus. Comm. (1996), 74 Ohio St.3d 250, 252. Because the commission does not have to list all the evidence considered, the presumption of regularity that attaches to commission proceedings gives rise to a second presumption — that the commission indeed considered all evidence before it. Id. at 252. Although this presumption can be rebutted, relator has failed to rebut it here. Therefore, the commission's failure to expressly address Dr. Collins' report does not justify the issuance of a writ of mandamus.
 {¶ 5} Following an independent review of this matter, we find that the magistrate has properly determined the pertinent facts and applied the appropriate law. Therefore, we adopt the magistrate's decision as our own, including the findings of fact contained therein. However, we modify the conclusions of law to point out that the commission must cite the evidence upon which it relied to reach its decision, but it need not enumerate or discuss all the evidence it considered. In accordance with the magistrate's recommendation, we deny the requested writ of mandamus.
Objections overruled; writ of mandamus denied.
Lazarus, P.J., and Brown, J., concur.
 APPENDIX A State of Ohio ex rel. : Ford Motor Company, Relator, : v. : The Industrial Commission of Ohio : and Donald W. Dunmyer, Sr., : Respondents. :
 No. 03AP-189 (REGULAR CALENDAR) :
 MAGISTRATE'S DECISION Rendered on September 29, 2003. {¶ 6} In this original action, relator, Ford Motor Company, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order granting permanent total disability ("PTD") compensation to respondent Donald W. Dunmyer, Sr. ("claimant") and to enter an order denying said compensation.
 Findings of Fact {¶ 7} 1. Claimant has five industrial claims relating to his employment with relator. The claim pertinent here is allowed for "bilateral carpal tunnel," and is assigned claim number OD45485-22.
 {¶ 8} 2. On May 12, 2000, claimant filed an application for PTD compensation. In support of his application, claimant submitted a report, dated May 11, 2000, from Juan M. Hernandez, M.D. Dr. Hernandez's report states in its entirety:
Donald Dunmyer, a 57-year-old male, has been under my medical care since 9/26/94 for a bilateral carpal tunnel syndrome diagnosis. He was diagnosed with work-related bilateral carpal tunnel syndrome on 6/15/85 (claim no. OD45485). He did undergo bilateral carpal tunnel release surgery in 1990. Dr. Lehman performed those procedures. He did well for approximately four years following the initial surgeries. He was diagnosed with recurrent carpal tunnel syndrome (per EMG/NCS) on 12/14/94. He underwent repeat surgery on the left wrist on 9/19/95 and the right wrist on 1/23/96. Dr. Biondi did those procedures. Despite surgical interventions, he has been plagued with persistent carpal tunnel syndrome. Repeat EMG was done on 11/6/97, which confirmed persistent Median neuropathy at the wrists bilaterally. He has followed up with Dr. Biondi and obtained second opinion from Dr. Rodney Green. Both hand surgeons recommend no additional surgery. Both surgeons concur that there is really nothing else that can be done to resolve the carpal tunnel syndrome. The best this man can do is rest his hands and limit using his hands as much as possible. Dr. Biondi, in a letter dated 11/14/96, recommended Mr. Dunmyer go on disability due to the persistent CTS. He has severe swelling of the hands. His grip strength is severely weak bilaterally. Ford Motor Company employs him. In 1997, the company changed his position to No. 3 Cleaner. This job involves no repetitive use of the hands. Mr. Dunmyer has tried to stay gainfully employed in this job description. However, he suffers from severe hand/wrist swelling with minimal use of his hands. His grip is too weak to grasp or hold onto objects. Since coming under my care, he has had extensive and frequent periods of temporary-totally disability as follows: 9/18/95 to 5/6/96, 4/9/97 to 10/13/97, 2/2/98 to 4/26/98, 8/14/99 to 10/25/99 and 1/19/00 to date. He has tried to return to work; however, it is now evident that he is totally disabled because of the carpal tunnel syndrome.
Donald Dunmyer has worked for Ford Motors since 1968. He was a production worker there from approximately 1968 to 1971. He was a material handler from 1971 to 1996. He worked as a metal finished [sic] for approximately one year in 1993. His most recent position was NO. 3 Cleaner.
Donald Dunmyer has a sixth-grade education. He left school in the early 1950s to go to work. He has no GED certificate. He has no specialized vocational training. Reading and writing skills are very poor. He has no Military experience.
Due to this patient's age, limited education and lack of transferable job skills; vocational rehabilitation or retraining is not a reasonable option. His allowed industrial diagnosis of carpal tunnel syndrome is disabling. He is at a level of maximum-medical improvement. No surgical intervention or treatment will result in resolution of the carpal tunnel syndrome. The only relief he gets is with resting his hands. Despite placement in a job that did not require repetitive use or much exertion of his hands, he has not been able to remain gainfully employed because of severe swelling, numbness and loss of strength in the hands.
Donald Dunmyer is, in my medical opinion; permanently and totally disabled from any form of gainful employment as a direct result of bilateral carpal tunnel syndrome.
 {¶ 9} 3. On January 15, 2001, claimant was examined on behalf of the commission by Daniel L. Collins, M.D. In his narrative report, Dr. Collins opined:
The next question is in regard to whether the claimant can perform any of his former positions of employment. I feel the patient can perform at least one of the former positions he had, that of #3 cleaner with Ford Motor Company. I would make recommendations that he be restricted from use of the power scrubber but otherwise can perform the essential duties with some restriction regarding lifting of weights and this is indicated on the occupational activity assessment form.
If that position as a #3 cleaner does not comply with the occupational activity assessment form that I have completed, I certainly feel that the patient is capable of performing other sustained renumerative [sic] work activity. * * *
 {¶ 10} 4. Following a June 20, 2001 hearing, a staff hearing officer ("SHO") issued an order granting PTD compensation beginning May 11, 2000, based upon Dr. Hernandez's report. The SHO's order was mailed on July 7, 2001, and states:
The Staff Hearing Officer has carefully considered all evidence in file and filed at today's hearing.
It is the finding of the Staff Hearing Officer that the claimant is permanently and totally disabled.
The Staff Hearing Officer relies upon the persuasive report dated 05/11/2000, and prepared by Dr. Hernandez. He states that he has been treating the claimant since 1994. His report supports the conclusion that the allowed medical conditions in this claim, in and of themselves, render the claimant incapable of sustained remunerative employment. He states at two different places that the claimant is totally disabled due to the carpal tunnel syndrome. The second time he states the claimant is permanently and totally disabled due to the carpal tunnel syndrome. Although the doctor uses the word disabled, it is clear he means permanently and totally impaired as he bases his opinion solely on the allowed physical injury. The doctor notes the disability factors only when referring to the feasibility of vocational rehabilitation, and right after he does this he again states that the carpal tunnel syndrome is disabling.
Since it is the finding of the Staff Hearing Officer that the allowed conditions in this claim render the claimant incapable of engaging in any sustained remunerative employment on a purely medical basis, the Staff Hearing Officer does not find it necessary to consider the claimant's non-medical disability factors of age, education, and prior work experience. State,ex rel. Libbey-Owens Ford v. Indus. Comm. (1991)62 Ohio St.3d 6.
The start date of the payment of the permanent and total disability compensation is 05/11/2000. The Staff Hearing Officer chooses this date because it is the date of the persuasive report of Dr. Hernandez.
It is the finding of the Staff Hearing Officer that the permanent and total disability compensation is to be allocated as follows: 100% to claim number 98-534935, and 0% to all other claims.
The Staff Hearing Officer makes the above allocation based on the fact that Dr. Hernandez relates the claimant's impairment due solely to the carpal tunnel syndrome.
 {¶ 11} 5. On July 16, 2001, relator moved for reconsideration of the SHO's order of June 20, 2001. In its motion for reconsideration, relator claimed that the commission's reliance upon the report of Dr. Hernandez in the June 20, 2001 order was a clear mistake of law and/or clear mistake of fact. Essentially, relator argued that Dr. Hernandez's report lacked evidentiary value and thus did not provide the some evidence needed to support the PTD award. In its motion for reconsideration, relator also claimed that the commission's allocation of 100 percent of the cost of the claim to claim number 98-534935 was a clear mistake of law and/or clear mistake of fact because the PTD award was based solely upon "bilateral carpal tunnel" which is the allowance in claim number OD45485-22.
 {¶ 12} 6. On July 25, 2001, the same SHO who heard the PTD application issued a "corrected order" stating:
The order granting permanent total disability is corrected to the following extent:
Permanent total disability is allocated at 100% in claim OD45485-22 and not 98-534935. This is based on the fact that Dr. Hernandez bases the claimant's permanent and total impairment solely on bilateral carpal tunnel syndrome. This condition is allowed only in OD45485-22.
In all other respects the order granting permanent total disability remains the same.
 {¶ 13} 7. On August 10, 2001, relator again moved for reconsideration of the SHO's order of June 20, 2001, and for reconsideration of the SHO's "corrected order" mailed July 25, 2001. This second motion for reconsideration reiterated the claim made in the first motion for reconsideration that it was a clear mistake of law and/or clear mistake of fact for the commission to rely on Dr. Hernandez's report. Relator also claimed that the commission lacked jurisdiction to issue the corrected order mailed July 25, 2001.
 {¶ 14} 8. Thereafter, the commission itself issued an order, typed September 13, 2001, stating:
The request for reconsideration filed 08/10/2001, by the employer from the findings mailed 07/11/2001 [sic], is denied for the reason that the request fails to meet the criteria of Industrial Commission Resolution No. R98-1-3 Dated May 6, 1998.
Under the continuing jurisdiction of the Industrial Commission pursuant to O.R.C. 4123.52, the order of the Staff Hearing Officer, findings mailed 07/25/2001, is vacated for the reason did not have jurisdiction to issue a corrected order after the employer filed [its] request for reconsideration on 07/11/2001 [sic].
If is further the order of the Industrial Commission that the claims be referred to the Columbus Regional Office to be reset before Staff Hearing Officer Brian Smith, on the issue of reallocation of the permanent total disability award.
 {¶ 15} 9. On November 28, 2001, the SHO who heard the PTD application mailed an order stating:
The Commission's findings mailed 07/07/2001 is modified to the extent that the Permanent Total Disability rate of Comp-ensation be adjusted as follows:
It is the finding of the Staff Hearing Officer that this claim has been allowed for: BILATERAL CARPAL TUNNEL.
The order granting permanent total disability is corrected [to the] following extent:
Permanent total disability is allocated at 100% in claim OD45485-22 and not 98-534935. This is based on the fact that Dr. Hernandez bases the claimant's permanent and total impairment solely on bilateral carpal tunnel syndrome. This condition is allowed only OD45485-22. [Sic.]
In all other respects the order granting permanent total disability remains the same.
(Emphasis sic.)
 {¶ 16} 10. On March 3, 2002, relator, Ford Motor Company, filed this mandamus action.
 Conclusions of Law {¶ 17} The main issue is whether the report of Dr. Hernandez is some evidence supporting the commission's finding that one of the allowed conditions of the industrial claims precludes all sustained remunerative employment.
 {¶ 18} Finding that the report of Dr. Hernandez is some evidence supporting PTD, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 19} Relator advances several arguments in support of its contention that Dr. Hernandez's report fails to provide some evidence supporting the PTD award.
 {¶ 20} For its first argument, relator contends that Dr. Hernandez's report is defective because Dr. Hernandez only evaluated one of the allowed conditions. Citing State ex rel.Anderson v. Indus. Comm. (1980), 62 Ohio St.2d 166, and Stateex rel. Rhodeback v. Johnstown Mfg., Inc. (1986),26 Ohio St.3d 115, relator asserts that the commission must rely upon a medical report that evaluates the "combined effect" of all the allowed conditions of the industrial claims. Because Dr. Hernandez did not render a "combined effect" opinion, relator argues that the report alone cannot support PTD. The magistrate disagrees.
 {¶ 21} In Anderson, the court held that the commission, when determining whether a claimant is PTD, cannot admit an examining physician's report as evidence where the examining physician has not evaluated the combined effect of all conditions for which workers' compensation benefits have been allowed.Rhodeback, supra, at 117 (summarizing Anderson's holding).
 {¶ 22} In State ex rel. Burley v. Coil Packing, Inc.
(1987), 31 Ohio St.3d 18, the court overruled Anderson. InBurley, the court reasoned that the practical application of the Anderson evidentiary doctrine had ultimately undermined the adjudicatory function of the commission.
 {¶ 23} In short, relator's first argument challenging Dr. Hernandez's report under the overruled Anderson evidentiary doctrine lacks merit.
 {¶ 24} Relator's second argument relies upon State ex rel.Wallace v. Indus. Comm. (1979), 57 Ohio St.2d 55. In Wallace, the court held that a non-examining physician is required to accept all the findings of the examining physician but not the opinion drawn therefrom. State ex rel. Consolidation Coal Co. v.Indus. Comm. (1997), 78 Ohio St.3d 176, 179.
 {¶ 25} Relator argues here that Dr. Hernandez must be viewed as a non-examining physician and, because he did not accept the findings of an examining physician, his report must be eliminated from evidentiary consideration under the Wallace rule. The magistrate disagrees.
 {¶ 26} Clearly, Dr. Hernandez is an examining physician as his report so indicates. In fact, Dr. Hernandez is a treating physician who states in his report that claimant "has been under my medical care since 9/26/94 for a bilateral carpal tunnel syndrome diagnosis." Dr. Hernandez further indicates that, since coming under his care, claimant has had extensive and frequent periods of temporary total disability. The most recent period of temporary total disability identified in the report is "1/19/00 to date." Dr. Hernandez goes on to state that "it is now evident that he is totally disabled because of the carpal tunnel syndrome."
 {¶ 27} Contrary to relator's suggestion that Dr. Hernandez fails to specify the last date of examination does not fatally flaw the report. Dr. Hernandez's report can be read to indicate that claimant remained under his care at the time the report was written. As such, Dr. Hernandez is an examining physician whose opinion is time relevant to the PTD application. Because Dr. Hernandez is an examining physician, the Wallace rule does not apply to his report.
 {¶ 28} Relator's third argument relies upon State ex rel.Lopez v. Indus. Comm. (1994), 69 Ohio St.3d 445, 450. InLopez, the court found:
[Dr.] Seltzer's opinion also improperly strays beyond the bounds of impairment into that of disability. His conclusion is expressly based, in part, on claimant's "additional history," which consists of Seltzer's discussion of claimant's non-medical disability factors. * * *
 {¶ 29} As reported in Lopez, at 446, Dr. Seltzer's report stated:
"Opinion: Based on the history, subjective complaints,additional history, and my objective findings, it is my opinion that Valentin Lopez is permanently and totally disabled [sic] and unfit for sustained remunerative employment as a result of his industrial injury of November 8, 1982." (Emphasis added.)
Pertinent here is the court's pronouncement in State ex rel.Lawrence v. American Lubricants Co. (1988), 40 Ohio St.3d 321,322:
* * * Permanent total disability is the inability to engage in sustained remunerative employment. State, ex rel. Jennings, v.Indus. Comm. (1982), 1 Ohio St.3d 101 * * *. In State, ex rel.Stephenson, v. Indus. Comm. (1987), 31 Ohio St.3d 167, * * * we stated that for purposes of permanent total disability determination, examining physicians should confine their opinions to the question of medical impairment, and that the commission, in addressing the more comprehensive issue of permanent totaldisability, should also consider the "* * * claimant's age, education, work record, and all other factors, such as physical, psychological, and sociological, that are contained within the record * * *." Id. at 173[.] * * *
(Emphasis sic.)
 {¶ 30} Also pertinent here is a portion of the court's opinion in State ex rel. Stephenson v. Indus. Comm. (1987),31 Ohio St.3d 167, 171. Addressing the commission's adjudication of PTD applications, the Stephenson court states:
Typically, to gain such insight, the commission relies upon the doctors' reports. These usually include the examination of the claimant and a medical analysis of the physical condition highlighting the allowed injury. The doctors' determination of the severity of the physical condition generally presents a conclusion as to the examinee's percentage of physical impairment of function. Doctors' reports regularly use the words "disability" and "impairment" interchangeably, which use is not in accordance with the Medical Examination Manual issued by the Industrial Commission. However, in the context of the medical report, it may be concluded that reference to the claimant's physical impairment is generally intended. This court, in State,ex rel. Dallas, v. Indus. Comm. (1984), 11 Ohio St.3d 193, * * * and Meeks v. Ohio Brass Co. (1984), 10 Ohio St.3d 147, * * * noted the different meanings of the terms. We pointed out that "impairment" is the amount of a claimant's anatomical and/or mental loss of function and is to be determined by the doctors and set forth within the medical reports. We also noted that "disability" is the effect that the physical impairment has on the claimant's ability to work, which is to be determined by the Industrial Commission and its hearing officers.
 {¶ 31} In the magistrate's view, while Dr. Hernandez does cite some of the non-medical factors, this recitation does not necessarily indicate that he has "improperly strayed beyond the bounds of impairment into that of disability" in rendering his opinion that the claimant is "permanently and totally disabled from any form of gainful employment as a direct result of bilateral carpal tunnel syndrome."
 {¶ 32} Significantly, Dr. Hernandez details the surgical history of the bilateral carpal tunnel syndrome. He notes that claimant underwent repeat surgeries on the left and right wrists and that, despite the repeat surgeries, claimant has been plagued with persistent carpal tunnel syndrome. He opines that the best claimant can do is rest his hands and limit using his hands as much as possible. Dr. Hernandez also notes that claimant suffers from severe hand/wrist swelling and that his grip is too weak to grasp or hold onto objects.
 {¶ 33} Dr. Hernandez's description of claimant's impairment of his wrists and hands is consistent with PTD. Given Dr. Hernandez's description of the impairment to the wrists and hands following repeat surgeries, the commission could conclude that Dr. Hernandez's opinion did not stray into the non-medical disability factors.
 {¶ 34} The magistrate further contrasts Dr. Hernandez's report with that of Dr. Seltzer's report in Lopez, supra. Dr. Seltzer left no doubt that his opinion that Lopez is permanently and totally disabled was based in part upon the "additional history" which involves a recitation of claimant's age, education, and other factors. Here, Dr. Hernandez's report contrasts sharply with Dr. Seltzer's report in Lopez.
 {¶ 35} In short, the Lopez case does not support relator's argument that Dr. Hernandez's report should be eliminated from evidentiary consideration.
 {¶ 36} Relator also asserts that the commission has failed to rule on its motion for reconsideration filed July 16, 2001. The magistrate disagrees with relator's factual assertion that the commission has failed to rule on its July 16, 2001 motion. To begin, the July 16, 2001 motion for reconsideration had two components. First, the motion challenged the SHO's PTD award of June 20, 2001 as a clear mistake of law and/or clear mistake of fact based upon the assertion that Dr. Hernandez's report fails to support the PTD award. Second, the motion challenged the SHO's allocation of 100 percent of the cost of the award to the wrong claim.
 {¶ 37} After the SHO issued a "corrected order" addressing the allocation issue, relator filed another motion for reconsideration on August 10, 2001, that not only challenged the "corrected order" on jurisdictional grounds, but also reiterated the challenge to the SHO's order of June 20, 2001, that was the subject of the July 16, 2001 motion for reconsideration. In short, relator's August 10, 2001 motion for reconsideration was, in part, a repeat of the July 16, 2001 motion for reconsideration.
 {¶ 38} In the commission's order typed September 13, 2001, the commission stated:
The request for reconsideration filed 08/10/2001, by the employer from the findings mailed 07/11/2001 [sic], is denied for the reason that the request fails to meet the criteria of Industrial Commission Resolution No. R98-1-3 Dated May 6, 1998.
 {¶ 39} It is clear to the magistrate that the order's reference to "findings mailed 07/11/2001" is a reference to the SHO's order of June 20, 2001 that was mailed on July 7, 2001. (See Supplemental Stipulated Evidence filed August 20, 2003.)
 {¶ 40} Given that the commission's order typed September 13, 2001 denies relator's August 10, 2001 motion for reconsideration as it pertained to the "findings" of the SHO's order of June 20, 2001, it necessarily denies relator's July 16, 2001 motion for reconsideration as it pertained to the challenge to Dr. Hernandez's report.
 {¶ 41} Moreover, even if it can be argued that the commission has failed to rule on relator's July 16, 2001 motion for reconsideration, the motion is moot given the magistrate's disposition of this mandamus action. Given that the SHO's order of June 20, 2001 is a final commission order that, on the merits of the PTD determination, contains no clear mistake of law and/or clear mistake of fact, the commission has no authority to vacate that portion of the SHO's order of June 20, 2001 that awards PTD to the claimant. Thus, to order the commission to rule on relator's July 16, 2001 motion for reconsideration would be to order the commission to perform a vain act.
 {¶ 42} The magistrate further notes that relator was incorrect in asserting that the SHO lacked jurisdiction to issue his "corrected order" mailed July 25, 2001. Relator's citation toState ex rel. Todd v. General Motors (1981), 65 Ohio St.2d 18, fails to support relator's proposition that relator's filing a motion for reconsideration on July 16, 2001, removed jurisdiction from the commission to issue the "corrected order." Unlike theTodd case, the order at issue here involves a determination of claimant's extent of disability which is not appealable to the court of common pleas.
 {¶ 43} The commission, in its order typed September 13, 2001, erroneously states that it did not have jurisdiction to issue the "corrected order" after the employer had filed its initial request for reconsideration. However, the commission's determination in its order typed September 13, 2001 to vacate the "corrected order" is harmless error because subsequently, on November 28, 2001, the SHO mailed an order that corrects the allocation of the claim.
 {¶ 44} For the foregoing reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.