**[This opinion has been published in *Ohio Official Reports* at 74 Ohio St.3d 264.]**

THE STATE EX REL. SHIELDS, APPELLANT, *v.* INDUSTRIAL COMMISSION OF

OHIO ET AL., APPELLEES.

[Cite as *State ex rel. Shields v. Indus. Comm.*, 1996-Ohio-140.]

*Workers' compensation—Application for permanent total disability compensation—Industrial Commission does not abuse its discretion in denying compensation when order adequately sets forth the reasoning the commission used to reach its decision.*

(No. 94-1179—Submitted October 24, 1995—Decided January 10, 1996.)

APPEAL from the Court of Appeals for Franklin County, No. 93APD03-427.

_____

{¶ 1} Appellant-claimant, Donald E. Shields, suffered several injuries in the course of and arising from his employment with appellee Central Soya Company, and his workers' compensation claims were allowed. In 1992, claimant's application for permanent total disability compensation culminated in a return of the cause to the appellee Industrial Commission of Ohio for further consideration pursuant to *State ex rel. Noll v. Indus. Comm.* (1991), 57 Ohio St. 3d 203, 567 N. E. 2d 245.

{¶ 2} At the rehearing, five reports were relevant. Commission physicians Drs. John H. Vetter and William Reynolds assessed claimant's permanent partial impairment at twenty-nine percent and fifty percent, respectively. Both doctors prohibited claimant from returning to his former job, but felt that claimant could do sedentary to light work. Both recommended rehabilitation, although Reynolds cautioned that it was "doubtful that he [claimant] is motivated to return to any type of work."

{¶ 3} Claimant submitted three reports. Dr. Stephen Chrisman attributed claimant's alleged inability to work to "[p]ossible ruptured disc, lumbar

radiolapathy [*sic*], degenerative arthritis and disc disease. Obesity." Of these conditions, only lumbar radiculopathy has been allowed.

**{¶ 4}** Dr. Lawrence A. Pabst extensively discussed claimant's lumbar degenerative joint disease, degenerative disc disease and L4-5 bulging--all nonallowed conditions. He also observed:

"I also note a vocational evaluation report which I think is most important to denote. Particularly noting his education level, that of being high school, [with a] lower level of performance testing. Also his physical capacity performance, particularly noting his decreased manual dexterity, limited overhead arm use, impression as far as his ability to complete formal training, lack of carry over skills from his prior employment, and his assessed prognosis."

**{¶ 5}** He further noted:

"With regard to his [claimant's] status and potential treatment, I think it is evident that he is at the end of the line and has reached maximum medical improvement. He evidently is not felt to be a surgical candidate. It is obvious from his unrelated factors, such as obesity, certainly the risks would be high. From his physical exam status with the absence of radiculopathy, certainly [the] success rate is poor potentially with regard to disc disease only. With the described response to his prior treatment, particularly in his exercise programming, etc., and considering the findings on his vocational evaluation, he would not be [a] rehabilitation candidate.

"Regarding his extent of disability, strictly speaking, from an objective standpoint only referable to the above findings, according to the AMA guidelines 3rd edition, his combined percentage of permanent partial impairment, I would have to admit would only be rated 25% [of the] whole body. There are obviously other factors to consider in his assessment however as discussed and documented above. Subjectively, claimant feels he is totally disabled. From his functional

2

evaluation which appears complete and well done, patient's physical capacities would be limited to a sedentary or possibly semi-sedentary level. ***

"I think it is clear from the vocational evaluation and I would agree with the assessment on that evaluation from his exam to date that he, for all practical purposes considering his educational level and testing, and all other factors noted, would not really be considered a candidate for any kind of training program of this nature. I would also question his ability to sustain engagement in this type of job activity if this was even available. I think that the prognosis for this would be poor as well as even finding a position such as this in all reality and probability, even if we assume he could achieve this level of performance and retraining. In view of this it is clear that he would be unable at this time or in the future to return to his prior occupation. Overall, considering all the factors, I think that the potential for his employability is basically nil. I think the bottom line is that he is totally and permanently disabled [*sic*]."

{¶ 6} Claimant's third report was that of a vocational consultant, Carl W. Hartung, who reported:

"Overall, Mr. Shields demonstrated below average ability to perform in the academic areas and physical capacities and in the average range of reasoning development. He is probably not capable of returning to his previous position of milling operator and he would have a difficult time of successfully completing a formal training program.

"His previous employment was in the semi-skilled area of specific vocational preparation and the knowledge he gained from 20+ years of his employment will have very limited usefulness in transferring to a new position.

"He may be able to perform jobs in the sedentary level of physical demands if he could find employment that would allow him to alternate his standing and sitting positions frequently. But, when his current abilities, physical limitations, transferable skills, and academic levels are combined with the geographical

availability of employment for sedentary semi-skilled positions prognosis for his returning to work is very guarded."

**{¶ 7}** The commission denied permanent total disability compensation, writing:

"The reports of Doctor(s) Chrisman, Reynolds and Vetter were reviewed and evaluated. The order is based upon the reports of Doctor(s) Vetter, evidence in the file and/or evidence adduced at the hearing.

"The claimant is 47 years old and has a high school education. Commission specialists Drs. Vetter and Reynolds have indicated that the claimant is capable of performing sedentary to light work. Dr. Reynolds indicated that the claimant is in need of a general rehabilitation conditioning program and both doctors recommend vocational rehabilitation. Based upon the claimant's relatively young age, education and the recommendations of Drs. Vetter and Reynolds, it is found that the claimant should be able to return to some form of sustained remunerative employment following participation in a comprehensive physical and vocational rehabilitation program. Therefore, the claimant is not permanently precluded from engaging in any type of sustained remunerative employment."

**{¶ 8}** Claimant brought a complaint in mandamus in the Court of Appeals for Franklin County, alleging that the commission abused its discretion in denying permanent total disability compensation. The court disagreed and denied the writ.

**{¶ 9}** This cause is now before this court upon an appeal as of right.

_____

*Stewart Jaffy & Associates Co., L.P.A.*, *Stewart R. Jaffy* and *Marc J. Jaffy*; and *Kevin P. Collins*, for appellant.

*Betty D. Montgomery*, Attorney General, and *Dennis L. Hufstader*, Assistant Attorney General, for appellee Industrial Commission.

*Vorys Sater*, *Seymour & Pease*, *Robert A. Minor* and *Randall W. Mikes*, for appellee Central Soya Company.

4

_____

*Per Curiam.*

**{¶ 10}** Claimant supplied the commission with two doctors' reports. Serious flaws in both reports, however, dictate their removal from evidentiary consideration. Both Drs. Chrisman and Pabst rely heavily on nonallowed medical conditions. Pabst further factors in nonmedical data. *State ex rel. Waddle v. Indus. Comm.* (1993), 67 Ohio St. 3d 452, 619 N. E. 2d 1018, and *State ex rel. Lopez v. Indus. Comm.*(1994), 69 Ohio St. 3d 445, 633 N. E. 2d 528, compel the removal of these reports from consideration.

**{¶ 11}** Removal of the Chrisman and Pabst reports leaves only the Vetter and Reynolds reports, on which the commission currently relies. Both Drs. Vetter and Reynolds found claimant capable of sedentary to light work. Claimant's application, therefore, hinges on the commission's interpretation of claimant's nonmedical factors.

**{¶ 12}** The Hartung vocational report discussed these factors, but was, from the face of the order, overlooked by the commission. Such omission would typically compel a return for further consideration pursuant to *State ex rel. Fultz v. Indus. Comm.* (1994), 69 Ohio St. 3d 327, 631 N. E. 2d 1057. This case, however, provides an exception to that general rule.

**{¶ 13}** *Fultz* was motivated by the concern that, had the commission been aware of the omitted evidence, it may have reached a different conclusion. That purpose, however, cannot be furthered where the evidence is incapable of supporting a result contrary to that already reached by the commission, which is what we find here.

**{¶ 14}** Hartung conceded that claimant's nonmedical factors would not preclude retraining in some types of sedentary work. Hartung limited those sedentary jobs to ones which would permit claimant to alternately sit and stand.

Claimant argues that this limitation is tantamount to permanent total disability compensation, since sedentary employment would confine claimant to a sitting position for eight hours.

{¶ 15} Claimant ignores that the only medical evidence that imposed sitting/standing restrictions were the Chrisman and Pabst reports. These reports, however, relied on nonallowed conditions and were properly discounted by the commission. Similarly, Hartung's observations of claimant's positional discomfort during the evaluation are insufficient to substantiate these restrictions, since Hartung is not a medical doctor and is not qualified to attribute claimant's discomfort to the allowed conditions.

{¶ 16} Removing these restrictions leaves Hartung's report with only one conclusion that can withstand review--that claimant's nonmedical profile is consistent with retraining into sedentary work. Because sedentary work was recommended by Drs. Vetter and Reynolds, Hartung's report effectively supports the commission's decision. A "remand"--which would only serve to validate the commission's decision further--is, therefore, unnecessary.

{¶ 17} Turning to the question of *Noll* sufficiency, we find that the order fulfills our directives in that case. In *State ex rel Ellis v. McGraw Edison Co.* (1993), 66 Ohio St. 3d 92, 609 N. E. 2d 164, we upheld a permanent total disability compensation denial order that was similar to that now at issue. In *Ellis*, the commission wrote:

"'The objective findings contained in the report of Dr. Hutchison reflect claimant is capable of sustained remunerative activity at the light level. His relatively young age and education reflects [*sic*] he retains the transferable skills to engage in light job duties.'" *Id.* at 93, 609 N.E. 2d at 165.

{¶ 18} In affirming the commission, we reasoned:

"The commission exercised its prerogative including that, at age fifty-one, claimant was young, not old, and that his age was a help, not a hindrance. So, too,

the conclusion with regard to claimant's education, which also derives support from the record. More so than claimant's age, his education can be interpreted as either an asset or a liability. While his grade school level spelling and below-average reading ability clearly can be perceived negatively, the same rehabilitation report that determined these academic skills to be a limitation nonetheless concluded that his high school education was an asset. The commission was persuaded by the latter conclusion." *Id.* at 94, 609 N.E. 2d at 165-166.

{¶ 19} So, too, in *State ex rel. Hart v. Indus. Comm.* (1993), 66 Ohio St. 3d 95, 609 N. E. 2d 166. There, the commission stated:

"'Claimant is 39 years old, his G.E.D. is an assests [*sic*] in claimant's retraining and/or returning to work. Claimant has a work history as a truck driver, however Industrial Commission examiner Dr. Baldoni stated claimant could engage in sedentary work.'" *Id.* at 96, 609 N.E. 2d at 167.

{¶ 20} Again, we wrote:

"*** The present commission decision was based on a combination of medical and nonmedical factors--Dr. Baldoni's conclusion that claimant could do sedentary work, as well as claimant's youth and education. These factors provide 'some evidence' supporting the denial of permanent total disability compensation." *Id.* at 96, 609 N.E. 2d at 167.

{¶ 21} The present commission order notes that claimant's age and education were deemed to be vocational assets. Along with the cited rehabilitation recommendations of Drs. Reynolds and Vetter, the order adequately sets forth the reasoning that the commission used to deny permanent total disability compensation.

{¶ 22} Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, WRIGHT, RESNICK, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

_____