DECISION ON OBJECTIONS TO MAGISTRATE'S DECISION
{¶ 1} Relator, Mary A. Sanders, commenced this original action requesting a writ of mandamus that compels respondent Industrial Commission of Ohio to vacate three orders: two procedural orders denying leave to take an expert's deposition and a final order denying compensation for permanent total disability. Relator seeks a writ directing the commission to grant leave to take the depositions and to hold a new hearing on her permanent total disability application.
 {¶ 2} Pursuant to Civ.R. 53 and Section (M), Loc.R. 12 of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In her decision the magistrate concluded that no defect exists in Dr. Lutz's report that would require the commission to permit this deposition. By contrast, however, the magistrate concluded that Dr. Kontosh's report contains significant contradictions, requiring the commission either to grant the requested deposition or to remove his report from consideration. Accordingly, the magistrate determined that a limited writ is warranted.
 {¶ 3} Respondent Industrial Commission of Ohio has filed objections to the magistrate's decision. In them, the commission disputes the magistrate's analysis that led to her conclusion that either relator be allowed to depose Dr. Kontosh or the commission must remove his report from evidentiary consideration at a new hearing addressing relator's permanent total disability eligibility.
 {¶ 4} Specifically, the magistrate determined that "Dr. Kontosh's report contains significant contradictions * * *. For example, Dr. Kontosh, in assessing claimant's `General Educational Development,' placed her at level three for reasoning and at level two for math and language. He also opined that, if Dr. Lutz's opinion were adopted (that claimant could perform sedentary work), then claimant could work as a `General clerk, telephone solicitor, [or] cashier.'" (Magistrate's Decision, ¶ 23.) From that the magistrate concluded that "according to the Dictionary of Occupational Titles * * * the job of `Clerk, General' requires level three aptitude in math and language and requires light — not sedentary — exertion. Thus, Dr. Kontosh appeared to select a job option that was not only contrary to his own assessment of claimant's aptitudes but also contrary the exertional rating imposed by Dr. Lutz * * *." (Magistrate's Decision, ¶ 24.)
 {¶ 5} In disputing the foregoing, the commission attached relevant portions from a current edition of the Dictionary of Occupational Titles, and observes that "Clerk, General" is rated at a level two aptitude in math, not a level three as the magistrate concluded and employed in her analysis.
 {¶ 6} While the commission points out a potential discrepancy in the magistrate's decision regarding the level of math required for the position of clerk, the commission at the same time "concedes to the remainder of the magistrate's conclusions regarding this issue." (Objections, 3.) Because the magistrate delineated other bases on which the deposition of Dr. Kontosh is appropriate, we sustain the commission's objection only with respect to the math element of the magistrate's decision, but overrule the objection insofar as it contests the magistrate's conclusion that the commission either must allow the deposition of Dr. Kontosh or exclude his report from consideration in a new hearing to determine relator's entitlement to permanent total disability compensation.
 {¶ 7} Following independent review pursuant to Civ.R. 53, we find the magistrate has properly determined the pertinent facts and applied the salient law to them, with the exception noted above. Accordingly, we adopt the magistrate's decision, including the findings of fact and conclusions of law contained in it, with the noted exception. In accordance with the magistrate's recommendation, we issue a limited writ of mandamus returning this matter to the commission to vacate its order denying permanent total disability compensation, to grant relator's request for a deposition of Dr. Kontosh or, in the alternative, to remove his report from evidentiary consideration, to hold a new permanent total disability hearing, and to issue a new order granting or denying permanent total disability compensation in compliance with authorities such as State ex rel. Noll v. Indus.Comm. (1991), 57 Ohio St.3d 203, and State ex rel. Stephensonv. Indus. Comm. (1987), 31 Ohio St.3d 167.
Objections sustained in part, overruled in part and limitedwrit granted.
Lazarus, P.J., and Sadler, J., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Mary A. Sanders, : Relator, : v. : No. 03AP-660 Cin Made Corp., Cincinnati Sheet : (REGULAR CALENDAR) Metal Roofing Co. and Industrial : Commission of Ohio, : Respondents. :
 MAGISTRATE'S DECISION Rendered on December 31, 2003 IN MANDAMUS {¶ 8} In this original action in mandamus, relator, Mary A. Sanders, asks the court to issue a writ compelling respondent Industrial Commission of Ohio ("commission") to vacate three orders: two procedural orders denying leave to take an expert's deposition and a final order denying compensation for permanent total disability ("PTD"). Relator seeks a writ directing the commission to grant the depositions and to hold a new hearing on her PTD application.
Findings of Fact
 {¶ 9} 1. In 1972, Mary A. Sanders ("claimant") sustained an industrial injury. Her workers' compensation claim was allowed for a bruised right wrist, tendonitis of the right forearm tendon, and carpal tunnel syndrome.
 {¶ 10} 2. Claimant returned to work and continued working until October 24, 1984, when she sustained another injury. Her new workers' compensation claim was allowed for a lumbar strain and arthrosis of the lumbar spine, lumbago, and lumbosacral spondylosis. Claimant returned to work and continued working until some time in 1993. In August 2000, claimant had surgery for a carpal tunnel release.
 {¶ 11} 3. In June 2001, claimant filed a PTD application. In support of her application, she filed a December 2000 opinion from her treating physician, James R. Donovan, Jr., M.D., and a vocational report from Jennifer J. Stoeckel, Ph.D. In his report, Dr. Donovan based his opinion in part on claimant's nonmedical factor of education, stating that, "with previous failures [of treatment modalities], as well as her eighth grade education * * * she has indeed has reached maximum medical improvement [sic]." With respect to employment, Dr. Donovan stated:
* * * The patient cannot return to her former position of employment for reasons noted above. Due to her severe functional limitations, and limited education, we are unfortunately unable to recommend even modified work or worksite modifications.
 {¶ 12} 4. In August 2001, claimant was examined on behalf of the commission by James T. Lutz, M.D., who recited the medical history, including a mention of nonallowed conditions, and described his clinical findings as follows, in part:
* * * The claimant arose from a seated position with moderate difficulty and after brief hesitation entered the examination room with a moderately stiffened gait favoring the left side. Examination of the right wrist and forearm areas revealed a well-healed 1.0-centimeter surgical scar at the midline of the base of the ventral wrist. There was no obvious structural deformity, swelling or discoloration. No atrophy was noted of the thenar or hypothenar areas of the hand, and forearms were identical in size * * * [measurements omitted]. Tinel's and Phalen's were both negative at the right wrist. Generalized tenderness was noted over the flexor muscles of the proximal ventral forearm. The claimant complained of decreased sensation over the entire forearm, wrist and hand, and even into the distal part of the upper arm. Two-point discrimination was markedly reduced and measured greater than 14-millimeters on all digits of the right hand Manual muscle testing of the wrist extensors and flexors was excellent at 5/5, and range of motion studies were as follows: Felxion 60 degrees, extension 55 degrees, radial deviation 20 degrees, and ulnar deviation 30 degrees. Grip strength measured initially 4.0-kilograms bilaterally, however, this increased to 10-kilograms bilaterally with rapid exchange testing. Examination of the low back revealed mild loss of lordotic curvature and a level pelvis. Generalized tenderness was noted over the lumbosacral area without evidence of spasm. Deep tendon reflexes of the lower extremities were 2+ and symmetrical, and the claimant complained of decreased sensation on a global basis over both lower extremities. Straight leg raising was achieved at 50 degrees in both the sitting and supine positions with elevation of either leg causing ipsilateral low back pain and pulling, without evidence of radiculopathy. The claimant was able to heel and toe walk with modest difficulty, but could only perform a small fraction of a normal squat. Range of motion studies were as follows: Flexion 15 degrees, extension 10 degrees, right lateral flexion 10 degrees, and left lateral flexion 10 degrees.
Dr. Lutz set forth his opinions as follows, in part:
DISCUSSION: Mary Sanders sustained two industrial injuries whose claim allowances are noted above. She has undergone a single surgical procedure for right carpal tunnel release in August 2000. The claimant's complaints of global decreased sensation involving both the right upper extremity (and also the left upper extremity, and both lower extremities) is not completely consistent with the claim allowances. Other disability factors include the claimant's age of 60, her last date of work being on 8/13/93 and an eighth-grade education.
* * *
1. In my medical opinion, this claimant has reached maximum medical improvement ["MMI"] with regard to each specific allowed condition of the two injuries of record discussed above * * *.
2. * * * For severe contusion of the right wrist: For range of motion, utilizing figures 26 and 29 the claimant warrants a 1% upper extremity impairment. For neurosensory, neuromotor and specific disorders the claimant warrants a 0% impairment. For tendinitis of the flexor tendons of the right forearm: I will allow a 2% upper extremity impairment for the claimant's complaint of ongoing pain. For right carpal tunnel syndrome: Utilizing table 16 on page 57 for a median nerve entrapment at the wrist of mild severity the claimant warrants a 10% upper extremity impairment. Combining 10+2+1 the claimant warrants a 13% upper extremity impairment, which utilizing table 3 on page 20 corresponds to an 8% whole person impairment. For injuries to the lumbosacral including lumbar strain, lumbago, posttraumatic arthosis of the lumbar spine, and lumbosacral spondylosis: Utilizing table 72 on page 110 the claimant warrants a DRE category II, which equals a 5% whole person impairment. Combining 8+5 the claimant warrants a 13% whole person impairment.
3. Please see the enclosed physical strength rating.
On the accompanying form for rating physician capacity, Dr. Lutz indicated as follows:
(X) This claimant is capable of physical work activity as indicated below.
(X) "SEDENTARY WORK"
Sedentary work means exerting up to ten pounds of force occasionally (occasionally: activity or condition exists up to one-third of the time) and/or a negligible amount of force frequently (frequently: activity or condition exists from one-third to two-thirds of the time) to lift, carry, push, pull or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally * * *.
(Emphasis sic.)
 {¶ 13} 5. An employability assessment was prepared on behalf of the commission by Larry G. Kontosh, Ph.D., who placed claimant at level three for reasoning and at level two for math and language regarding her "General Educational Development." Based on claimant's work history, Dr. Kontosh also found that she had average dexterity of fingers and hands. Noting that claimant had learned semi-skilled work in the past, Dr. Kontosh opined that claimant "can learn new work." He concluded, however, that claimant's age of 60 years was a "placement disadvantage" and that her eighth grade education was a "significant placement disadvantage." He ultimately opined that, if the medical opinion of Dr. Lutz were adopted, claimant could work as a "General clerk, telephone solicitor, [or] cashier."
 {¶ 14} 6. In September 2001, claimant filed a motion for leave to take the deposition of Dr. Lutz. Claimant argued that Dr. Lutz had not adequately indicated her ability to sit, stand or walk. In addition, claimant stated that a deposition was necessary so that claimant could elicit from him an opinion as to the amount of time that claimant could bend, squat, stoop and kneel. Claimant further alleged a substantial disparity between the reports of Drs. Lutz and Donovan.
 {¶ 15} 7. On November 7, 2001, the commission denied claimant's motion to take Dr. Lutz's deposition, concluding that Dr. Lutz performed the examination, confined his opinion to the allowed conditions in these claims only, and answered the posed questions without ambiguity. The commission further emphasized that claimant's doctor, Dr. Donovan, had considered vocational factors in rendering his opinion, making it impossible to make a comparison between his medical opinion and Dr. Lutz's.
 {¶ 16} 8. On November 30, 2001, claimant filed a motion requesting leave to take Dr. Kontosh's deposition based on an allegation of substantial disparity between his report and the report of claimant's expert. Claimant also alleged that Dr. Kontosh had identified job options that were outside claimant's abilities. In January 2002, the commission denied the motion, finding that the experts had observed the same negative factors but had simply arrived at different conclusions.
 {¶ 17} 9. In June 2002, the commission denied the PTD application. First, the commission relied on Dr. Lutz in determining that claimant could perform work within the sedentary category. With respect to the nonmedical factors, the commission reviewed the contents of Dr. Kontosh's report and accepted, among other things, his opinion that claimant could perform the jobs of general clerk, telephone solicitor and cashier.
Conclusions of Law
 {¶ 18} In the present action, claimant contends that the commission abused its discretion in denying leave to take the depositions of two experts and also in denying PTD compensation.
 {¶ 19} R.C. 4123.09 provides that parties may take depositions with permission. Ohio Adm. Code 4121-3-09(6)(d) provides a procedure for requesting a deposition and lists factors for consideration, including whether a "substantial disparity exists between various medical reports on the issue." However, in State ex rel. Cox v. Greyhound Food Mgt., Inc.,95 Ohio St.3d 353, 2002-Ohio-2335, the Ohio Supreme Court clarified the standard for granting deposition requests. The court pointed out that a substantial disparity between percentage figures may be irrelevant when the disputed issue is not the claimant's percentage of disability. Id. at ¶ 18. Moreover, the court noted that substantial disparities in the evidence are commonplace in PTD cases and that, in a disputed disability matter, one of the primary purposes of holding a hearing is to present and debate the relative strengths and weaknesses of the medical reports. The court explained that, in some cases, it will be more appropriate to consider whether there is a defect in the report that can be cured by a deposition and whether the hearing itself is an equally reasonable option for resolving questions.
 {¶ 20} The magistrate finds no defect in Dr. Lutz's report that would require the commission to grant a deposition as a matter of legal duty. For example, the magistrate is aware of no rule of law that requires a physician opining as to disability to state specific amounts of time that a claimant can bend, squat, stoop and kneel. Here, Dr. Lutz stated in his report that claimant "could only perform a small fraction of a normal squat," and he specifically described claimant's ability to bend her spine forward, backward and to the side. He noted that claimant had undergone knee surgery for a nonindustrial condition but did not otherwise examine the knees, so an assessment of kneeling restrictions within the sedentary category does not appear absolutely essential. Dr. Lutz described claimant's capacities with respect to her injured wrist and forearm, noting her symptoms, ranges of motion, and strength in those areas. In addition, Dr. Lutz described her capacities for and limits upon lifting and standing/walking, by placing her within the category for sedentary exertion as defined on the worksheet for physical capacity. Overall, the magistrate finds no ambiguity that required a deposition for clarification nor any matters that required correction by deposition. Any weaknesses in the report could be adequately addressed in the hearing. The fact that claimant would like supplemental information and that supplemental opinions could be useful to the commission does not mean that the information was required to be provided as a matter of law.
 {¶ 21} As for the alleged disparity between Drs. Lutz and Donovan, the magistrate finds it difficult to assess because Dr. Lutz provided more clinical findings than did Dr. Donovan. With respect to the right upper extremity, both doctors noted numbness and sensory deficits, and both reported claimant's complaints of pain. Both measured strength and discrimination of the digits of the hand Dr. Donovan also repeatedly noted pain and decreased motion of the shoulder joint and cervical spine, although he did not explain the relationship of those symptoms to the allowed conditions. Also, Dr. Lutz found that claimant had reached MMI based solely on medical factors whereas Dr. Donovan included consideration of education, a nonmedical factor. Similarly, in opining that claimant could not perform other kinds of work, Dr. Donovan again relied on a nonmedical factor, which the commission must disregard. See, generally, State ex rel. Shields v. Indus.Comm. (1996), 74 Ohio St.3d 264; State ex rel. Catholic Dioceseof Cleveland v. Indus. Comm. (1994), 69 Ohio St.3d 560.
 {¶ 22} Further, the difference of opinion between the two doctors is not great, in that Dr. Lutz found that claimant could perform sedentary work whereas Dr. Donovan found that claimant could perform no work when her education was factored in. The commission was within its discretion to deny the deposition of Dr. Lutz.
 {¶ 23} With respect to Dr. Kontosh, the magistrate finds that Dr. Kontosh's report contains significant contradictions, as to which the commission was obliged either to grant the requested deposition or to remove his report from consideration. For example, Dr. Kontosh, in assessing claimant's "General Educational Development," placed her at level three for reasoning and at level two for math and language. He also opined that, if Dr. Lutz's opinion were adopted (that claimant could perform sedentary work), then claimant could work as a "General clerk, telephone solicitor, [or] cashier."
 {¶ 24} However, according to the Dictionary of Occupational Titles ("DOT"), the job of "Clerk, General" requires level three aptitude in math and language and requires light — not sedentary — exertion. Thus, Dr. Kontosh appeared to select a job option that was not only contrary to his own assessment of claimant's aptitudes but also contrary to the exertional rating imposed by Dr. Lutz, whose opinion he purported to be applying. Further, Dr. Kontosh stated that claimant could work as a cashier. Of the five types of cashier jobs listed in the DOT under section 211.462, three are in the light category and two are sedentary, but all
of them appear to require repetitive motion of the hands, to operate adding machines or cash registers, to handle cash and checks, to handle merchandise, or to write numbers, etc. Considering that claimant suffered from carpal tunnel syndrome and tendonitis, for which Dr. Lutz estimated a 13 percent impairment of the dominant upper extremity, one could readily question Dr. Kontosh's opinion that the job of cashier would be appropriate for this claimant. Further, with respect to the two sedentary cashier jobs, both require math aptitude at level three, whereas Dr. Kontosh had placed claimant at level two in math. The job of telephone solicitor also does not fit the ratings determined by Dr. Kontosh.
 {¶ 25} In a deposition, Dr. Kontosh may have been able to clarify his apparently contradictory opinions or correct them. In the absence of an explanation from Dr. Kontosh, however, the finder of fact could not adequately resolve these issues, and the hearing was, therefore, not an equally reasonable method for resolving the questions. Accordingly, the magistrate concludes that the commission was obliged to grant the deposition or in the alternative, to remove Dr. Kontosh's report from evidentiary consideration. A limited writ of mandamus is warranted.
 {¶ 26} In reaching this conclusion, the magistrate does not suggest that a comparison of an expert's list of job options with the DOT necessitates a deposition or exclusion of a vocational report whenever there is any discrepancy. Here, however, Dr. Kontosh listed only three options, each of which is riddled with contradictions and inconsistencies.
 {¶ 27} The magistrate recommends that the court issue a limited writ returning this matter to the commission to vacate its order denying PTD, to grant claimant's request for a deposition of Dr. Kontosh or in the alternative to remove his report from evidentiary consideration, to hold a new PTD hearing, and to issue a new order granting or denying PTD in compliance with authorities such as State ex rel. Noll v. Indus. Comm.
(1991), 57 Ohio St.3d 203, and State ex rel. Stephenson v.Indus. Comm. (1987), 31 Ohio St.3d 167.