[Cite as *State ex rel. Stover v. Indus. Comm.*, 2016-Ohio-4881.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio ex rel. Nicole Stover, :

       Relator, :

v. : No. 15AP-599

Industrial Commission of Ohio : (REGULAR CALENDAR)
and SABCO of Ohio, Inc.,
:
       Respondents.
:

---

## D E C I S I O N

**Rendered on July 7, 2016**

---

**On brief:** *Agee, Clymer, Mitchell & Laret,* and *Robert M. Robinson,* for relator.

**On brief:** *Michael DeWine*, Attorney General, and *Lisa R. Miller,* for respondent Industrial Commission of Ohio.

---

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

LUPER SCHUSTER, J.

{¶ 1} Relator, Nicole Stover, initiated this action requesting this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order which denied her application for permanent total disability ("PTD") compensation, and ordering the commission to find that she is entitled to that compensation.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued the appended decision, which includes findings of fact and conclusions of law. The magistrate determined the

record contains some evidence on which the commission could rely to deny Stover's request for PTD compensation. Based on the magistrate's determination that Stover has not demonstrated the commission abused its discretion in denying her application for PTD compensation, the magistrate recommends this court deny the requested writ of mandamus.

{¶ 3} Stover has filed objections to the magistrate's decision. Therefore, we must independently review the decision to ascertain whether "the magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d). Stover does not challenge the magistrate's recitation of the pertinent facts; however, she objects to the magistrate's conclusion that the commission did not abuse its discretion in denying her application for PTD compensation. Stover asserts the commission incorrectly found that "there has been no objective evidence or testing submitted to indicate that her intellect and literacy skills are anything less than consistent with her level of education." (Mag. Decision at ¶ 30.) Stover argues the commission abused its discretion in applying that factual finding in its disability analysis because psychological testing allegedly proves she has significant cognitive deficiencies not reflected in her grade level of education. Stover contends the magistrate erroneously rejected this argument. Stover's challenge to the magistrate's conclusions of law is unpersuasive.

{¶ 4} The relevant inquiry in a PTD determination is the claimant's ability to do any sustained remunerative employment. *State ex rel. Domjancic v. Indus. Comm.*, 69 Ohio St.3d 693 (1994); Ohio Adm.Code 4121-3-34(B)(1). Generally, in making this determination, the commission must consider not only medical impairments but also the claimant's age, education, work record, and other relevant non-medical factors. *State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167 (1987). A claimant's medical capacity to work is not dispositive if the claimant's non-medical factors foreclose employability. *State ex rel. Gay v. Mihm*, 68 Ohio St.3d 315 (1994).

{¶ 5} This court will not determine that the commission abused its discretion in denying an application for PTD compensation when there is some evidence in the record to support the commission's finding. *State ex rel. Rouch v. Eagle Tool & Machine Co.*, 26 Ohio St.3d 197, 198 (1986). The some evidence standard "reflects the established principle that the commission is in the best position to determine the weight and

credibility of the evidence and disputed facts." *State ex rel. Woolum v. Indus. Comm.*, 10th Dist. No. 02AP-780, 2003-Ohio-3336, ¶ 4, citing *State ex rel. Pavis v. Gen. Motors Corp., B.O.C. Group*, 65 Ohio St.3d 30, 33 (1992).

{¶ 6} Stover fails to demonstrate that the commission's decision was not supported by some evidence. As the magistrate noted, Stover's challenge to the commission's denial of her application for PTD compensation centers on the commission's statement regarding the absence of objective evidence demonstrating that her intellect and literacy skills are inconsistent with her level of education. According to Stover, her score report for the Shipley Institute of Living Scale ("Shipley") psychological testing contradicts the commission's statement. She asserts that the results of the Shipley test demonstrate her cognitive functioning is well below her ninth grade level of education. However, Michael A. Murphy, Ph.D., the psychologist who administered the Shipley test as part of his examination of Stover, opined that her psychological conditions are not work prohibitive, and characterized Stover's intelligence as average. The commission expressly relied on Dr. Murphy's observation that Stover possesses average intelligence as part of its analysis of non-medical vocational factors, including Stover's level of education. Considering the commission is the ultimate evaluator of non-medical vocational factors, *State ex rel. Jackson v. Indus. Comm.*, 79 Ohio St.3d 266 (1997), and considering Dr. Murphy's observation regarding Stover's intelligence, we cannot conclude the commission abused its discretion in finding no objective evidence that Stover's intellectual functioning is below her ninth grade level of education. Therefore, we reject Stover's challenge to the magistrate's decision.

{¶ 7} Following our independent review of the record pursuant to Civ.R. 53, we find the magistrate correctly determined Stover is not entitled to the requested writ of mandamus. The magistrate properly applied the pertinent law to the salient facts. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. We, therefore, overrule Stover's objections to the magistrate's decision and deny her request for a writ of mandamus.

*Objections overruled;*
*writ of mandamus denied.*

BROWN, J., concurs.
BRUNNER, J., dissents.

BRUNNER, J., dissenting.

{¶ 8}   I respectfully dissent from the decision of the majority, because I believe the "some evidence" standard which "reflects the established principle that the commission is in the best position to determine the weight and credibility of the evidence and disputed facts," was not met, and because, further, even if it could be shown to have been met under the facts and circumstances of this case, it is an inappropriate standard for determining the propriety of decisions by the Industrial Commission of Ohio, especially when applied to mental health and intellectual functioning determinations. *State ex rel. Woolum v. Indus. Comm.,* 10th Dist. No. 02AP-780, 2003-Ohio-3336, ¶ 4, citing *State ex rel. Pavis v. Gen. Motors Corp., B.O.C. Group,* 65 Ohio St.3d 30, 33 (1992).

{¶ 9}   First, the majority states:

> "Stover fails to demonstrate that the commission's decision was not supported by some evidence. * * * Stover's challenge to the commission's denial of her application for PTD compensation centers on the commission's statement regarding the absence of objective evidence demonstrating that her intellect and literacy skills are inconsistent with her level of education. * * * Michael A. Murphy, Ph.D., the psychologist who administered the Shipley test[1] as part of the examination of Stover, opined that her *psychological conditions are not work prohibitive, [and] characterized Stover's intelligence as average. The commission expressly relied on Dr. Murphy's observation that Stover possesses average intelligence as part of its analysis of non-medical vocational factors,* including Stover's level of education. Considering the commission is the ultimate evaluator of non-medical vocational factors, *State ex rel. Jackson v. Indus. Comm.,* 79 Ohio St.3d 266 (1997), and considering Dr. Murphy's observation regarding Stover's intelligence, we cannot conclude the commission abused its discretion in finding no objective evidence that Stover's intellectual functioning is below her ninth grade level of education."

(Emphasis added.) (Majority Decision at ¶ 6.)

{¶ 10} According to Ohio Adm.Code 4121-3-34(C)(1), as cited in *State ex rel. Manpower of Dayton v. Indus. Comm.,* 10th Dist. No. 14AP-376, 2015-Ohio-2650, ¶ 6, the administration of the Shipley test and examination by a psychologist are not non-

---

[1] The "Shipley" test is the Shipley Institute of Living Scale and is deemed psychological testing and a demonstration of cognitive functioning. Stover's scores on the test indicated her vocabulary is average, her abstraction is low, and her "Composite A" score is well below average.

vocational factors, but rather, medical factors. To this point, I would not refer to the Shipley test or the opinion of Dr. Murphy, whether or not inclusive of his discussion of the results of the Shipley test, as non-medical factors with the attendant legal precedents that apply to non-medical factors as cited by the majority. In *Manpower of Dayton* we held:

> It is well-settled that, when a medical expert expresses a disability opinion based on non-medical factors, such as education and employment history, that opinion is disqualified from evidentiary consideration. *State ex rel. Ohio State Univ. v. Allen*, Franklin App. No. 03AP-823, 2004-Ohio-3839, at ¶ 18, citing *State ex rel. Shields v. Indus. Comm.* (1996), 74 Ohio St.3d 264, 268, 1996 Ohio 140, 658 N.E.2d 296, and *State ex rel. Catholic Diocese of Cleveland v. Indus. Comm.* (1994), 69 Ohio St.3d 560, 1994 Ohio 392, 634 N.E.2d 1012. "However, where the doctor's medical and vocational commentaries can be separated, the commission may simply disregard a physician's opinions on vocational matters and accept the purely medical opinion." *Allen* at ¶ 18, citing *Catholic Diocese*. Thus, when it is clear from the doctor's report that he or she rendered a medical opinion based solely on the allowed conditions, the commission may rely on the medical opinion while ignoring any superfluous vocational opinion offered by the doctor. *Steelcraft Mfg. Co. v. Indus. Comm.*, Franklin App. No. 01AP-1271, 2002-Ohio-3778, at ¶ 37, citing *Catholic Diocese*.

*Manpower of Dayton* at ¶ 47, citing *State ex rel. DaimlerChrysler Corp. v. Bilbao*, 10th Dist. No. 04AP-861, 2005-Ohio-2802, ¶ 4.

{¶ 11} There is evidence from the Shipley test that Stover did not function intellectually at the level of her education. This test should not be considered a non-medical factor. Further, the magistrate found from Dr. Murphy's report that he did not adequately address the test results. The magistrate stated, "[w]ithout having an understanding of how the results of this test are calculated and categorized, the magistrate is not in a position to say that this scoring is objective evidence that relator's intellectual functioning is below the ninth grade level of education, which she completed." (Mag. Decision at ¶ 44.) It is at this point that Dr. Murphy's report fails the "some evidence" test. The burden of interpreting how the Shipley test supports, or is even inconsistent with Dr. Murphy's opinion that Stover's functioning was within normal limits does not and should not fall on Stover. To permit Dr. Murphy's report to constitute "some evidence" on which we would affirm the commission's decision, without requiring a

consideration, pro or con, of the Shipley test he administered while we acknowledge that Stover's grade level of education is an accurate reflection of intellectual functioning is to permit arbitrary, unexplained evidence to constitute the basis for the commission's decision. Under our standard of review in *Woolum,* under these circumstances, the commission's decision cannot stand.

{¶ 12} The fact that the magistrate disregarded the Shipley test results, apparently based on Dr. Murphy's failure to discuss them in any great detail in his overall medical opinion of Stover's ability to work, does not extinguish such evidence. Rather, the Shipley results so weaken the evidence on which the commission relied that its decision must be adequately explained in finding Dr. Murphy's report to be reliable enough to sustain a favorable appellate review.

> "'Where a commission order is *adequately* explained and based on some evidence, * * * the order will not be disturbed as manifesting an abuse of discretion.'" *State ex rel. Avalon Precision Casting Co. v. Indus. Comm.*, 109 Ohio St.3d 237, 2006-Ohio-2287, ¶ 9, 846 N.E.2d 1245, quoting *State ex rel. Mobley v. Industrial Comm.*, 78 Ohio St.3d 579, 584, 1997 Ohio 181, 679 N.E.2d 300, ¶ 9 (1997).

(Emphasis added.) *Manpower of Dayton* at ¶ 9.

{¶ 13} Without more, the commission's order cannot be adequately explained in the face of the difference between the Shipley test results (showing intellectual functioning less than educational level) and the conclusion of Dr. Murphy that Stover's intellectual functioning indicators were within "normal" limits. Without an explanation of how "normal" intellectual functioning as opined by Dr. Murphy correlates with the Shipley test results, we really do not know whether it is reasonable to rely on Dr. Murphy's report. The magistrate supplied more conjecture than explanation that Stover "did not drop out of school because of her grades, but because of automobile accidents involving herself and her brother." (Mag. Decision at ¶ 44.) But this does not supply an adequate explanation of the facts that Stover was found by Dr. Murphy to be "a woman of average intelligence and that her abstract reasoning, concept formation, and fund of knowledge were within normal limits," yet she was found not to perform consistently with her grade level of education in the results of the Shipley test. (Mag. Decision at ¶ 44.)

{¶ 14} This unexplained, uneven evidence is further distorted by Dr. Murphy's findings that Stover's "[s]hort-term memory is intermittently impaired, which she attributes to the injury," including not being able to "recall time frames," and the limitations of "psychomotor slowing, reduced short-term memory, and concentration" such that "psychotherapy on a maintenance basis of one visit every two to three months was appropriate" (having reached maximum medical improvement after four years of psychotherapy described as "well beyond guidelines").   (Mag. Decision at ¶ 27.) Any adequate explanation to this body of evidence is lacking such that the commission's decision lacks reliability as being based on "some evidence."

{¶ 15} One of Stover's arguments before the magistrate was that the commission should have relied on the medical reports of Drs. Renneker and Rabold, and having rejected those reports, was required to explain why.  Stover is correct on this point.  We have previously found the following:

> The commission has the exclusive authority to evaluate the weight and credibility of the evidence. *State ex rel. Burley v. Coil Packing, Inc.* (1987), 31 Ohio St.3d 18, 20-21, 31 Ohio B. 70, 508 N.E.2d 936. The commission is not required to note the evidence it finds unpersuasive or the reason for rejecting it, because "[l]ogic dictates that if the identity of rejected evidence is irrelevant, so is the reason for the rejection." *State ex rel. Bell v. Indus. Comm.* (1995), 72 Ohio St.3d 575, 578, 1995 Ohio 121, 651 N.E.2d 989. Accordingly, the commission does not need to state why it found one doctor's report more persuasive than that of another doctor. *Id.* at 577.
>
> When, however, the commission states a reason for rejecting a report, it may not do so arbitrarily. *State ex rel. Hutton v. Indus. Comm.* (1972), 29 Ohio St.2d 9, 13-14, 278 N.E.2d 34. To avoid rejecting medical proof arbitrarily, the commission must have, "some reasonable basis for the * * * rejection of a physician's finding." *State ex rel. Eberhardt v. Flxible Corp.* (1994), 70 Ohio St.3d 649, 655, 640 N.E.2d 815; see also *State ex rel. Pavis v. Gen. Motors Corp.*, 65 Ohio St.3d 30, 33, 1992 Ohio 114, 599 N.E.2d 272.

(Emphasis added.) *State ex rel. Deal v. Cunningham*, 10th Dist. No. 10AP-142, 2010-Ohio-6175, ¶ 9-10.  The magistrate supplied only the date of Dr. Murphy's report as the basis for permitting the commission to rely on it to the exclusion of the other medical reports and the Shipley test results.  This is not enough.  To succinctly summarize the

point cited from *Cunningham,* evidence may not be relied on arbitrarily. It also is noteworthy that, in *Cunningham,* no objective psychological testing was administered. *Id.* at ¶ 28. Here, the Shipley test was administered, but the commission stated that there had been no objective evidence or testing submitted to indicate that Stover's intellect and literacy skills are anything less than consistent with her level of education. The record simply does not support this.

{¶ 16} That Dr. Murphy did not extrapolate from the Shipley test in reaching his opinion does not mean that such objective evidence was lacking, especially since the Shipley test was a medical and not a vocational test. At a very minimum, the results of the Shipley test either should have been interpreted as part of his opinion, or the commission should have addressed the Shipley test results in reaching its conclusion. For the commission to arbitrarily dismiss such results (and the magistrate to attempt to explain them away in the absence of some explanation by the commission on their existence) falls short of constituting "some evidence" upon which the commission could base its findings, and, thus, upon which we can affirm its decision.

{¶ 17} We have previously discussed "arbitrary and capricious" in the context of an agency's application of its rules such that an agency must:

> "[A]rticulate a satisfactory explanation for its action including a '*rational connection between the facts found and the choice made.*' " *Motor Vehicle Manufacturer's Assn. of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.* (1983), 463 U.S. 29, 43, 103 S. Ct. 2856, 77 L. Ed. 2d 443, quoting *Burlington Truck Lines, Inc. v. United States* (1962), 371 U.S. 156, 168, 83 S. Ct. 239, 9 L. Ed. 2d 207. A judicial review of that explanation must inquire whether the decision is based upon relevant factors and whether there has been a clear error in judgment on the agency's part. *Id. Among the indicia that agency action is arbitrary and capricious are:* (1) that the agency has relied on factors the legislature did not intend it to consider; (2) that the agency failed to consider an important aspect of the problem; (3) that the agency's explanation of its decision is contrary to the evidence before it; or (4) that the *agency's action is implausible to an extent that it cannot be attributed to agency expertise. Id.*

(Emphasis added.) *Morning View Care Ctr.-Fulton v. Ohio Dept. of Human Servs.*, 148 Ohio App.3d 518, 2002-Ohio-2878, ¶ 44 (10th Dist.) Because I can find no rational way to harmonize (1) the commission's statement that there is an absence of objective

evidence demonstrating that Stover's intellect and literacy skills are inconsistent with her level of education, and (2) the existence of the Shipley test results administered by the very psychologist[2] who found her intellectual functioning to be within normal limits, I would find that the commission's finding is not based on "some evidence."

{¶ 18} The objections to the magistrate's decision that " 'there has been no objective evidence or testing submitted to indicate that her intellect and literacy skills are anything less than consistent with her level of education' " should have been sustained, and the case should be remanded back to the commission for further proceedings consistent with the issues raised in this dissent.  (Stover's Objs. to Mag. Decision at 4, quoting June 19, 2015 Compl. for Writ, Ex. A at 1-2.)

{¶ 19} Finally, because of evaluating mental and intellectual functioning involves multiple types of tests, experts, and reports, and because the potential for internal consistency of, and conflict between, such medical reports is much greater for mental health and intellectual functioning-related injuries, I would adopt a pure and unmodified abuse of discretion standard of review, rather than "some evidence" standard for reviewing these types of injuries.

---

[2] Ohio Adm.Code 4121-3-34(C)(1) strongly infers that the report of a psychologist is "medical evidence." *Manpower of Dayton* at ¶ 75.  Further, R.C. 4732.01(A) does not prohibit the use of the term "medical evidence" when referring to a report from an examining psychologist appointed by the commission. *Id.* at ¶ 80.

APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. Nicole Stover, | : | |
| Relator, | : | |
| v. | : | No. 15AP-599 |
| Industrial Commission of Ohio, and SABCO of Ohio, Inc., | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on February 17, 2016

*Agee, Clymer, Mitchell & Laret,* and *Robert M. Robinson,* for relator.

*Michael DeWine*, Attorney General, and *Lisa R. Miller,* for respondent Industrial Commission of Ohio.

IN MANDAMUS

{¶ 20} Relator, Nicole Stover, has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order which denied her application for permanent total disability ("PTD") compensation, and ordering the commission to find that she is entitled to that compensation.

Findings of Fact:

{¶ 21} 1. Relator sustained a work-related injury on July 1, 2009 and her workers' compensation claim has been allowed for the following conditions:

> Concussion; acute cervical sprain; right trapezius strain; right shoulder strain; extruded disc C6-C7; major depressive disorder, single; post concussion syndrome; cervical myofascial pain syndrome.

{¶ 22} 2. Relator received temporary total disability ("TTD") compensation until her allowed conditions were found to have reached maximum medical improvement ("MMI"). Relator has not returned to work since the date of injury.

{¶ 23} 3. Relator filed her application for PTD compensation on December 29, 2014. At that time, relator was 42 years of age. According to her application, relator had applied for and was receiving social security disability payments in the amount of $1,711 per month. On her application, relator indicated further that she had completed the ninth grade and that she did not finish high school because of automobile accidents, one involving herself, and one involving her brother. Relator did indicate that she could read, write, and perform basic math, and that she had additional training to become a certified home health aide.

{¶ 24} 4. The commission had relator examined by Mini B. Goddard, M.D. In her February 11, 2015 report, Dr. Goddard identified the allowed conditions in relator's claim, provided her physical findings upon examination, and concluded that she had an eight percent whole person impairment for the allowed physical conditions, and that she was capable of performing light work with the following additional restrictions: no arm controls, no constant or repetitive push/pull with her upper extremities.

{¶ 25} 5. There are three medical reports contained in the stipulation of evidence addressing the effects of relator's allowed psychological condition on her ability to work.

{¶ 26} (1) The April 24, 2014 report of Michael A. Murphy, Ph.D. The Ohio Bureau of Workers' Compensation ("BWC") had referred relator to Dr. Murphy for a psychological evaluation at the time the commission was deciding whether or not her TTD compensation should be terminated. Dr. Murphy identified the allowed conditions in relator's claim, reviewed the medical records which he reviewed, noted relator's history, including both psychological and medical treatment. With regard to his mental status examination, Dr. Murphy concluded that cognitively, relator was a woman of average intelligence, her abstract reasoning, concept formation, and fund of knowledge were estimated to be within normal limits, her judgment was not impaired, and her executive

functions such as decision making, flexibility, and social perceptions were in tact, and estimated to be within normal limits. Dr. Murphy performed the Beck Depression Inventory-2. The results of that test placed relator in the range of severe depression. Dr. Murphy also performed the Shipley Institute of Living Scale test which is designed to provide an estimate of cognitive functioning. The numeric results of that testing provide:

|  | **Vocabulary** | **Abstraction** | **Composite A** |
| --- | --- | --- | --- |
| **Standard Score** | 91 | 61 | 73 |
| **Percentile Rank** | 27 | 0.5 | 4 |
| **Raw Score** | 27 | 5 | |
| **Interpretive Category** | Average | Low | Well Below Average |

Impairment Index—This index can only be calculated for adults older than 18 who have completed their education.

**AQ**
Standard Score 54
Impairment Index: Highly probable impairment

{¶ 27} Ultimately, Dr. Murphy noted that relator had undergone psychotherapy for four years which was well beyond guidelines and that her allowed psychological conditions had reached MMI. Dr. Murphy noted that her allowed psychological conditions were not work prohibitive and she was capable of performing entry-level labor activity. Dr. Murphy did note the following limitations: psychomotor slowing, reduced short-term memory, and concentration. Dr. Murphy also opined that psychotherapy on a maintenance basis of one visit every two to three months was appropriate.

{¶ 28} (2) The November 24, 2014 report of Nancy Renneker, M.D. In her report, Dr. Renneker identified the allowed conditions in relator's claim, reviewed and discussed the medical records she reviewed. After noting relator's permanent job restrictions related to her allowed physical conditions, Dr. Renneker concluded that she was permanently and totally disabled, stating:

> In summary, Nicole Stover is permanently and totally disabled from performing sustained remunerative employment due to her residual impairments related to her work injury of 7-1-2009 (Claim no. 09-337069).

{¶ 29} (3) The February 10, 2015 report of Denise Rabold, Ph.D. In her report, Dr. Rabold identified the allowed conditions in relator's claim, as well as the medical records

which she reviewed.  Dr. Rabold ultimately concluded that relator had a Class 3, moderate level of impairment with regard to activities of daily living, social functioning, and a Class 4, marked impairment with regard to her concentration and adaptation.  Dr. Rabold assessed a 55 percent impairment and concluded that relator was not capable of performing any sustained remunerative employment as a result of her allowed psychological condition.

{¶ 30} 6.  Relator's application was heard before a staff hearing officer ("SHO") on April 20, 2015 and was denied.  The SHO relied on the medical reports of Drs. Goddard and Murphy to find that relator was capable of performing light duty work with the additional restrictions of no constant/repetitive/pulling, and no arm controls, and that Dr. Murphy opined that relator was capable of performing entry level labor activity. Thereafter, the SHO discussed the non-medical disability factors and found that her age, education, and prior work experience were positive factors, stating:

> The Injured Worker has a 9th grade education and can read, write, and do basic math. There has been no objective evidence or testing submitted to indicate that her intellect and literacy skills are anything less than consistent with her level of education. She was found to be of average intelligence by Dr. Murphy, which indicates an ability to obtain higher than a 9th grade education. Her prior work history as a department store clerk, fast food worker, restaurant hostess, cashier, and home health aide/worker show that she has the ability to learn and perform entry level unskilled and semi-skilled work as these jobs include both levels of work per the Dictionary of Occupational Titles (DOT). (*Lewis v. Industrial Commission* (1997), 10th CT. App., No. 96APD04-438). To this extent the Injured Worker's education and intelligence are found to be assets to further education and/or retraining for entry level work within her restrictions. (*Wood v. Industrial Commission* 1997), 78 O.S. 3d 414).
>
> The Injured Worker has prior work experience in entry level cashier, customer service, hostess, and department store jobs.  According to their description in the Dictionary of Occupational Titles, such jobs do not usually require constant or repetitive pushing or pulling or arm controls, therefore, the skills from these positions would be transferable to many light and sedentary customer service and hostess positions and some cashier positions such as

parking lot cashier. Further, according to the IC-2[,] the job as a home health aide required filling out forms that documented all of the activities performed, a skill transferable to clerical work. To this extent her work history is found to be an asset to re-training/re-employment.

{¶ 31} Thereafter, the SHO noted that relator lacked transferrable skills, but found that to not be critical because relator could be retrained to perform unskilled and semi-unskilled work within the physical restrictions noted. The SHO's reasoning for this conclusion follows:

To the extent there may be a lack of transferable skills, it is found the Injured Worker is capable of unskilled and semi-skilled work within the physical restrictions noted above. This finding is based on the fact that, according to the DOT, semi-skilled work only requires up to 6 months of training while unskilled work only requires up to 30 days of training, often on the job. Further, unskilled work, by its very definition, does not require transferable skills. Therefore, a lack of transferable skills would not rule out unskilled work. At age 42 the Injured Worker has a significant amount of work life expectancy in which to complete 30 days to 6 months of training or to obtain further education including her GED and beyond if necessary. The Injured Worker's prior work history shows that she has the intelligence and academic skills to learn and perform up to semi-skilled work. There are a number of sedentary unskilled jobs that require no more education than that possessed by the Injured Worker. Some examples include: telephone quotation clerk; order clerk food and beverage; paramutual ticket checker; surveillance system monitor; charge account clerk; and parking garage cashier. By their definition in the DOT, these jobs would appear to be entry level and meet the restrictions noted by Doctors Goddard and Murphy. This list is exemplary and not exhaustive. When one considers light duty work the available number of jobs only increases. It is noted that, according to the 12/24/2014 Vocational Rehabilitation Closure report, the determination that she was not a feasible candidate was based in part on non-claim related barriers.

{¶ 32} 7. Thereafter, relator filed the instant mandamus action in this court.

Conclusions of Law:

{¶ 33} For the reasons that follow, it is this magistrate's decision that this court should deny relator's request for a writ of mandamus.

{¶ 34} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 35} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. *State ex rel. Domjancic v. Indus. Comm.*, 69 Ohio St.3d 693 (1994). Generally, in making this determination, the commission must consider not only medical impairments but also the claimant's age, education, work record and other relevant non-medical factors. *State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167 (1987). Thus, a claimant's medical capacity to work is not dispositive if the claimant's non-medical factors foreclose employability. *State ex rel. Gay v. Mihm*, 68 Ohio St.3d 315 (1994). The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. *State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203 (1991).

{¶ 36} Relator makes the following arguments: (1) the commission should have relied on the medical reports of Drs. Renneker and Rabold and, having rejected those reports, the commission was required to explain why; (2) the commission should not have relied on the medical report of Dr. Murphy to find that relator was not permanently and totally disabled when Dr. Murphy's report was prepared prior to the filing of her PTD application, and Dr. Murphy's own testing indicated that she was severely impaired; and (3) the commission ignored evidence that her intellectual abilities were below her stated ninth grade education. For the reasons that follow, the magistrate rejects relator's arguments.

{¶ 37} The commission has the exclusive authority to evaluate evidentiary weight and credibility. *State ex rel. Burley v. Coil Packing, Inc.*, 31 Ohio St.3d 18 (1987). In explaining its decisions, the commission need not set forth the reason for finding one report more persuasive than another. *State ex rel. Bell v. Indus. Comm.*, 72 Ohio St.3d 575 (1995).

{¶ 38} As above noted, the commission evaluates the weight and credibility given to the evidence and the commission is not required to explain why it finds certain medical evidence to be more persuasive. As such, this argument of relator lacks merit.

{¶ 39} In arguing that the commission should not have relied on the medical report of Dr. Murphy, relator first appears to argue that the report was stale since it was prepared eight months prior to the filing of her PTD application. This magistrate disagrees.

{¶ 40} Ohio Adm.Code 4121-3-34(C) provides for the processing of applications for PTD compensation and specifically provides at subsection (1) as follows:

> Each application for permanent total disability shall identify, if already on file, or be accompanied by medical evidence from a physician, or a psychologist or a psychiatric specialist in a claim that has been allowed for a psychiatric or psychological condition, that supports an application for permanent total disability compensation. The medical examination upon which the report is based must be performed within twenty-four months prior to the date of filing of the application for permanent total disability compensation. The medical evidence used to support an application for permanent total disability compensation is to provide an opinion that addresses the injured worker's physical and/or mental limitations resulting from the allowed conditions in the claim(s).

{¶ 41} As above noted, Dr. Murphy's report was written eight months prior to the filing of her application for PTD compensation. Inasmuch as Dr. Murphy determined that her allowed psychological conditions had reached MMI and that the impairment resulting therefrom was not work prohibitive, Dr. Murphy's report not only addressed the relevant question, but was not stale.

{¶ 42} Relator's real argument here is that Dr. Murphy's report supports a finding that she is cognitively impaired and contradicts the commission's statement that:

> There has been *no objective evidence or testing submitted to indicate that her intellect and literacy skills are anything less than consistent with her level of education.* She was found to be of average intelligence by Dr. Murphy, which indicates an ability to obtain higher than a 9th grade education.

(Emphasis added.)

{¶ 43} As relator notes, a claimant's grade level of education is an accurate reflection of their intellectual functioning in the absence of evidence which would demonstrate otherwise.

{¶ 44} Relator argues that the commission was required to find that her actual intellectual abilities were below her stated ninth grade education and objects to the commission's statement that there was no objective evidence or testing which would indicate that her intellect and literacy skills were less than consistent with her level of education. Relator points to the results of the Shipley Institute of Living Scale found in Dr. Murphy's report. Relator's scoring indicates her vocabulary is average, her abstraction is low, and her Composite A score is well below average. Without having an understanding of how the results of this test are calculated and categorized, the magistrate is not in a position to say that this scoring is objective evidence that relator's intellectual functioning is below the ninth grade level of education, which she completed. According to her application, relator did not drop out of school because of her grades, but because of automobile accidents involving herself and her brother. She further indicated on her application that she could read, write, and perform basic math. Further, as noted in the findings of fact, Dr. Murphy found relator to be a woman of average intelligence and that her abstract reasoning, concept formation, and fund of knowledge were within normal limits. Specifically, Dr. Murphy stated:

> Cognitively, the Injured Worker is a woman of average intelligence. She is alert and oriented in all spheres. Comprehension of simple commands is unimpaired. Stream of thought and flow of ideas are normal and coherent. There is no evidence of cognitive dysfunction due to psychoses, head injury, or organicity. Hallucinations are absent. Short-term memory is intermittently impaired, which she attributes to the injury. She states, "Some things I can recall, some things I can't." Long-term memory is intact. The Injured Worker could recall time frames.
>
> Abstract reasoning, concept formation, and fund of knowledge are estimated to be within normal limits. Her judgment is not impaired. Executive functions such as decision making, flexibility, and social perceptions are intact and estimated to be within normal limits.

{¶ 45} Despite the results of the Shipley Institute test, Dr. Murphy concluded that relator's cognitive function was within normal limits for a woman her age, with her level of education, as well as life and work experiences. Testing is only one part of an examination used by professionals to evaluate a patient's condition.

{¶ 46} Relator simply has not demonstrated that the report of Dr. Murphy does not constitute some evidence upon which the commission could properly rely nor that the SHO's statement concerning objective testing requires the issuance of a writ.

{¶ 47} Based on the foregoing, it is the magistrate's decision that relator has not demonstrated that the commission abused its discretion when it denied her application for PTD compensation, and this court should deny her request for a writ of mandamus.


/S/ MAGISTRATE
STEPHANIE BISCA


**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).