DECISION ON OBJECTIONS TO THE MAGISTRATE'S DECISION
{¶ 1} Relator, DaimlerChrysler Corporation, has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order granting respondent-claimant's Amparo Bilbao's, application for permanent total disability ("PTD") compensation and to enter an order denying such compensation.
 {¶ 2} This matter was referred to a court-appointed magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, and recommended that this court deny relator's request for a writ of mandamus. (Attached as Appendix A.) Relator has filed objections to the magistrate's decision.
 {¶ 3} The crux of relator's objections is that the magistrate erred by finding that the January 30, 2003 report of Stanley M. Zupnick, Ph.D., constituted some evidence upon which the commission could rely to support a finding of PTD. Relator claims that Dr. Zupnick's report cannot constitute some evidence because Dr. Zupnick specifically considered non-medical disability factors in rendering his opinion that claimant is not a viable candidate for vocational rehabilitation. The portion about which relator complains is the following:
It is not felt that she could sustain concentration for any length of time and given her limited training and education, it would be difficult to place her in any type of vocational rehabilitation program.
 {¶ 4} It is well-settled that, when a medical expert expresses a disability opinion based on non-medical factors, such as education and employment history, that opinion is disqualified from evidentiary consideration. State ex rel. Ohio State Univ. v. Allen, Franklin App. No. 03AP-823, 2004-Ohio-3839, at ¶ 18, citing State ex rel. Shields v.Indus. Comm. (1996), 74 Ohio St.3d 264, 268, and State ex rel. CatholicDiocese of Cleveland v. Indus. Comm. (1994), 69 Ohio St.3d 560. "However, where the doctor's medical and vocational commentaries can be separated, the commission may simply disregard a physician's opinions on vocational matters and accept the purely medical opinion." Allen, at ¶ 18, citing Catholic Diocese. Thus, when it is clear from the doctor's report that he or she rendered a medical opinion based solely on the allowed conditions, the commission may rely on the medical opinion while ignoring any superfluous vocational opinion offered by the doctor. Stateex rel. Steelcraft Mfg. Co. v. Indus. Comm., Franklin App. No. 01AP-1271, 2002-Ohio-3778, at ¶ 37, citing Catholic Diocese.
 {¶ 5} In the present case, Dr. Zupnick's medical and vocational commentaries can be separated. The only sentence that includes a comment on non-medical factors is the sentence relating to vocational rehabilitation. The other portions of the doctor's opinion do not mention non-medical factors or discuss vocational matters, and his medical opinions are based solely upon the claimant's psychiatric condition. Specifically, Dr. Zupnick found that the claimant was "at a point where she should be considered permanently and totally disabled based upon her allowed psychiatric diagnoses. This does not take into account any of her other physical situations and allowed conditions." The doctor then explained that the claimant had poor concentration; was quite depressed, tearful, and disorganized; had suicidal ideation; and saw little reason to continue. Pursuant to Catholic Diocese, we do not believe that Dr. Zupnick's comment on extraneous vocational matters renders the rest of his medical opinion, based solely on claimant's psychiatric condition, invalid. The doctor's remark regarding claimant's training and education was limited to his non-expert judgment on vocational issues and did not transcend into his medical opinion and ultimate conclusion. Thus, the commission could have relied on the doctor's medical opinion while ignoring his superfluous vocational opinion. For these reasons, relator's objections are without merit.
 {¶ 6} After an examination of the magistrate's decision, an independent review of the record pursuant to Civ.R. 53, and due consideration of relator's objections, we overrule the objections and find that the magistrate sufficiently discussed and determined the issues raised. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it, and deny relator's request for a writ of mandamus.
Objections overruled, writ of mandamus denied.
Klatt and Sadler, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. :
DaimlerChrysler Corporation, :
 Relator, :
v. : No. 04AP-861
Amparo Bilbao and Industrial : (REGULAR CALENDAR)
Commission of Ohio, :
 Respondents. :
 MAGISTRATE'S DECISION Rendered on February 10, 2005 Eastman Smith LTD., Thomas A. Dixon and Richard L. Johnson, for relator.
Gallon Takacs Co., L.P.A., and Theodore A. Bowman, for respondent Amparo Bilbao.
Jim Petro, Attorney General, and Andrew J. Alatis, for respondent Industrial Commission of Ohio.
In Mandamus.
 {¶ 7} In this original action, relator, DaimlerChrysler Corporation, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order granting permanent total disability ("PTD") compensation to respondent Amparo Bilbao ("claimant") and to enter an order denying said compensation.
Findings of Fact:
 {¶ 8} 1. On October 19, 1988, claimant sustained an industrial injury while employed as an assembly line worker at the old Jeep plant located at Toledo, Ohio. On that date, claimant slipped on some oil on the floor and fell into a pit. The industrial claim was initially allowed for "lumbar strain," and assigned claim number 989535-22. Claimant has not worked since the date of her industrial injury.
 {¶ 9} 2. Thereafter, the claim was amended to include "bilateral carpal tunnel syndrome." Claimant underwent carpal tunnel release surgeries on both hands.
 {¶ 10} 3. In January 1994, the commission additionally allowed the claim for "neurotic depression."
 {¶ 11} 4. On September 13, 1994, claimant filed an application for PTD compensation. Following an October 10, 1995 hearing, two staff hearing officers ("SHO") issued an order denying the application. In that order, the commission found that claimant retains the ability to return to her former position of employment.
 {¶ 12} 5. In December 1996, the commission additionally allowed the claim for "major depression and panic disorder."
 {¶ 13} 6. On April 7, 2003, claimant filed another application for PTD compensation.
 {¶ 14} 7. In support of her PTD application, claimant submitted a report, dated January 30, 2003, from clinical psychologist Stanley M. Zupnick, Ph.D. Dr. Zupnick examined claimant at the request of her counsel. Dr. Zupnick reported:
Examination:
Mrs. Bilboa [sic] arrived promptly for her appointment. She, in fact, came by bus as she did not have any other transportation. She was appropriately dressed and made up. She was wearing slacks and a sweater. She was oriented in all spheres. Her memory for dates was generally good. It was generally good for events, as well. Affect was flattened and mood quite depressed. She cried on occasion. She was alert and oriented. Intellectual level appeared to be within the low average range. Insight into her condition appeared poor. Judgment appeared fair. Her speech was generally understandable, although at times it was difficult to understand particular phrasing. She had some difficulty explaining certain concepts, but overall her speech was legible and intelligible. There were no neologisms, circumstantiality nor tangentiality. Cognitive processes were intact. No paranoid trends nor ideation was noted. No unusual fears or phobic concerns were noted. Suicidal ideation was, however, noted.
Discussion and Opinion:
This evaluation was requested in order to determine Mrs. Bilboa's [sic] current level of disability and offer some determination as to her degree of permanency. Based on this evaluation, it is the examiner's impression that Mrs. Bilboa [sic] is at a point where she should be considered permanently and totally disabled based upon her allowed psychiatric diagnoses. This does not take into account any of her other physical situations and allowed conditions. She has poor concentration, is quite depressed, tearful, is disorganized at home, has suicidal ideation and has, at least from her perspective, little reason to continue. It is not felt that she could sustain concentration for any length of time and given her limited training and education, it would be difficult to place her in any type of vocational rehabilitation program. Therefore, Mrs. Bilboa [sic] should be considered permanently and totally disabled, and unable to engage in any type of sustained remunerative employment. She certainly remains depressed and is definitely in need of ongoing psychiatric intervention to prevent any further deterioration and any further suicidal attempts.
(Emphasis sic.)
 {¶ 15} 8. Following a March 24, 2004 hearing, an SHO issued an order awarding PTD compensation starting January 30, 2003, based exclusively upon Dr. Zupnick's report. The order states:
The injured worker was examined on 01/30/2003 by Dr. Stanley M. Zupnick, Clinical Psychologist. He stated "It is this examiner's impression that Mrs. Bilbao is at a point where [she] should be considered permanently and totally disabled based upon her allowed psychiatric diagnoses. This does not take into account any of her other physical situations and allowed conditions. She has poor concentration, is quite depressed, tearful, is disorganized at home, has suicidal ideation and has, at least from her perspective, little reason to continue." Dr. Zupnick goes on to find that the injured worker is permanently and totally disabled and unable to engage in any type of sustained remunerative employment. He concludes by stating "She certainly remains depressed and is definitely in need of ongoing of psychiatric intervention to prevent any further deterioration and any further suicidal attempts."
At hearing, the injured worker testified that she had attempted suicide in 1995. She currently is under the care of both a psychiatrist and a psychologist. It should also be noted that the psychiatric conditions were added to the allowance of the claim after the last permanent total disability application was turned down in 1995.
In conclusion, the Staff Hearing Officer finds the injured worker to be permanently and totally disabled from all forms of sustained remunerative employment due solely to the allowed psychiatric conditions. Under Industrial Commission rule 4121-3-34(D)(2)(a) there is no need to have a discussion regarding vocational factors of age, education, work history, due to the fact that the finding of permanent total disability was based solely on allowed medical conditions in the claim.
 {¶ 16} 9. Relator moved for reconsideration of the SHO's order of March 24, 2004. On June 4, 2004, the commission mailed an order denying reconsideration.
 {¶ 17} 10. On August 25, 2004, relator, DaimlerChyrsler Corporation, filed this mandamus action.
Conclusions of Law:
 {¶ 18} Two issues are presented: (1) whether Dr. Zupnick's report constitutes some evidence upon which the commission can exclusively rely to find that claimant is permanently and totally disabled based solely upon the psychiatric claim allowances; and (2) whether the commission abused its discretion in denying relator's request for reconsideration.
 {¶ 19} The magistrate finds: (1) Dr. Zupnick's report does constitute some evidence upon which the commission can rely to support a finding of permanent total disability; and (2) the commission did not abuse its discretion in denying relator's request for reconsideration.
 {¶ 20} Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 21} Turning to the first issue, Ohio Adm. Code 4121-3-34(D) sets forth the commission's guidelines for the adjudication of PTD applications. Ohio Adm. Code 4121-3-34(D)(2)(a) states:
If, after hearing, the adjudicator finds that the medical impairment resulting from the allowed condition(s) in the claim(s) prohibits the injured worker's return to the former position of employment as well as prohibits the injured worker from performing any sustained remunerative employment, the injured worker shall be found to be permanently and totally disabled, without reference to the vocational factors[.] * * *
 {¶ 22} As the commission notes in its order, the above-quoted rule was followed when the commission exclusively relied upon Dr. Zupnick's report to award PTD compensation.
 {¶ 23} According to relator, Dr. Zupnick's opinion that relator is permanently and totally disabled is improperly based in part upon nonmedical disability factors. Relator points specifically to the following portion of Dr. Zupnick's report:
* * * It is not felt that she could sustain concentration for any length of time and given her limited training and education, it would be difficult to place her in any type of vocational rehabilitation program. * * *
 {¶ 24} According to relator, because Dr. Zupnick found that it would be difficult to place claimant in any type of vocational rehabilitation program due to "her limited training and education," his opinion that claimant is permanently and totally disabled must be removed from evidentiary consideration. The magistrate disagrees.
 {¶ 25} The Supreme Court of Ohio has repeatedly held that "impairment" rather than "disability" is the proper subject of medical reports. Stateex rel. Lawrence v. American Lubricants Co. (1988), 40 Ohio St.3d 321. InState ex rel. Dallas v. Indus. Comm. (1984), 11 Ohio St.3d 193, the court explained the different meaning of the terms. "Impairment" is the amount of anatomical and/or mental loss of function and is to be determined by the doctor and set forth within the medical reports. "Disability" is the effect that the physical (or mental) impairment has on the ability to work, which is to be determined by the commission and its hearing officers. Id.
 {¶ 26} However, in the workers' compensation system, doctors are often asked to opine as to whether the claimant can return to his or her former position of employment or whether the claimant can perform sustained remunerative employment based upon the impairments resulting from one or more allowed conditions in the claim. While, technically, those types of opinions are disability opinions, the cases have universally permitted the commission to rely on those opinions.
 {¶ 27} However, where it is clear that a doctor's opinion indicating whether or not the claimant can perform sustained remunerative employment is premised, even in part, upon nonmedical factors, the doctor's opinion must be removed from evidentiary consideration. State ex rel. Lopez v.Indus. Comm. (1994), 69 Ohio St.3d 445 (Dr. Seltzer's opinion improperly strays beyond the bounds of impairment); State ex rel. Cordray v. Indus.Comm. (1990), 54 Ohio St.3d 99; State ex rel. Mobley v. Indus. Comm.
(1997), 78 Ohio St.3d 579, 585 (the commission properly rejected the report of Dr. Fallon because he considered age, education, and lack of rehabilitation potential).
 {¶ 28} It is not improper for a doctor to render an opinion in a PTD determination as to whether the impairments from the industrial injury permit the claimant to undergo physical or vocational rehabilitation. Clearly, the claimant's medical ability to undergo any type of rehabilitation is relevant to the commission's inquiry with respect to a PTD application. However, the doctor is not an expert as to whether nonmedical factors such as past training and education make vocational rehabilitation unrealistic. Here, when Dr. Zupnick states that "given her limited training and education, it would be difficult to place her in any type of vocational rehabilitation program," he is not speaking as a medical expert and, thus, the statement strays into matters that are not technically within his medical expertise. However, it can be noted that doctors often stray into rendering opinions on these types of matters in their reports.
 {¶ 29} The critical question here is not whether Dr. Zupnick's statement regarding claimant's eligibility for vocational rehabilitation strays beyond the bounds of the impairment evaluation and thus beyond Dr. Zupnick's medical expertise. Clearly, it does. Rather, the critical question here is whether Dr. Zupnick's statement regarding vocational rehabilitation taints his medical opinion that claimant is permanently and totally disabled based upon her allowed psychiatric diagnoses. It is clear to this magistrate that it does not.
 {¶ 30} In the second sentence of the final paragraph of his report, Dr. Zupnick states:
* * * Based on this evaluation, it is the examiner's impression that Mrs. Bilboa [sic] is at a point where she should be considered permanently and totally disabled based upon her allowed psychiatric diagnoses. * * *
 {¶ 31} This is a clear and unambiguous statement which, taken by itself, presents no indication that nonmedical factors such as age, education or work history were considered.
 {¶ 32} The above-quoted sentence is immediately followed by another sentence in which Dr. Zupnick properly indicates that nonallowed conditions were not considered. The next sentence properly lists the symptomology that supports permanent total disability, i.e., poor concentration, quite depressed, tearful, disorganized at home, and suicidal ideation.
 {¶ 33} It is not until the third sentence removed from the above-quoted critical opinion that we find Dr. Zupnick strays into the vocational rehabilitation matter. Thereafter, he repeats his opinion that claimant is permanently and totally disabled and unable to engage in any sustained remunerative employment. His concluding sentence in his report states that claimant remains depressed and needs continued psychiatric intervention.
 {¶ 34} Clearly, given the above analysis, it was within the commission's fact-finding discretion to view Dr. Zupnick's PTD opinion as being properly confined to the allowed conditions of the claim.
 {¶ 35} Moreover, in the magistrate's view, the paragraph in the report which describes the examination and records the clinical findings further supports the view that Dr. Zupnick's PTD opinion is not tainted by consideration of nonmedical factors. The paragraph captioned "Examination" is generally confined to the mental examination. Nonmedical factors such as age, education and work history are not discussed. Thus, read in its entirety, Dr. Zupnick's report clearly provides some evidence that the claimant is permanently and totally disabled based solely upon the psychiatric claim allowances. See State ex rel. Ford Motor Co. v.Indus. Comm., Franklin App. No. 03AP-189, 2004-Ohio-1056.
 {¶ 36} The second issue is whether the commission abused its discretion by denying relator's request for reconsideration. In its request for reconsideration, relator claimed that the SHO's order of March 24, 2004, contains a clear mistake of law by its reliance upon Dr. Zupnick's report. It has previously been explained by this magistrate that Dr. Zupnick's report is some evidence supporting the award. Thus, reliance on the report does not constitute a clear mistake of law.
 {¶ 37} In its request for reconsideration, relator also claimed that the SHO's order of March 24, 2004, contains several clear mistakes of fact that warrant commission reconsideration.
 {¶ 38} According to relator, it is a clear mistake of fact that the SHO notes in his order that claimant testified she "attempted suicide in 1995," yet fails to note or acknowledge that the attempted suicide predates the commission's denial of the first PTD application in October 1995, when it was determined that claimant was able to return to her former position of employment.
 {¶ 39} Dr. Zupnick states in his report that claimant "did make a suicide attempt in 1995 by taking an overdose," and that she was hospitalized for two weeks. However, neither the month nor the day of the suicide attempt is disclosed in Dr. Zupnick's report. Moreover, relator does not indicate any source from the record that might indicate the month or day in 1995 when the suicide attempt occurred. In his May 17, 2004 letter to the commission requesting reconsideration, while asserting that the suicide attempt preceded the first denial of PTD compensation, relator's counsel fails to identify the evidence supporting the factual assertion. Accordingly, the record before this court fails to conclusively show that the suicide attempt predated the denial of the first PTD application.
 {¶ 40} Moreover, even if relator can show that the suicide attempt predated the commission's denial of the first application, the SHO's order does not contain a clear mistake of fact in that regard. The SHO was under no duty to note in his order the time relationship between the suicide attempt and the denial of the first PTD application.
 {¶ 41} Furthermore, the commission's determination in October 1995, that claimant could return to her former position of employment does not render the suicide attempt any less a fact or render it a clear mistake of fact.
 {¶ 42} In its request for reconsideration, relator suggested that the SHO's statement "she is currently under the care of both a psychiatrist and a psychologist" was error because the last narrative report from any of the claimant's psychiatrists or psychologists is the March 15, 2002 report of Dr. Martinez who recommends vocational rehabilitation. Relator asserts here that the "last word" from claimant's treating psychiatrist does not support permanent total disability. Relator fails to identify a clear mistake of fact. Rather, relator seems to express its disagreement with the weight the commission gave to Dr. Zupnick's report. That is not a clear mistake of fact nor is it a proper argument to make in mandamus.
 {¶ 43} In its request for reconsideration, relator also claimed that the SHO's order contains a clear mistake of fact when it states "the psychiatric conditions were added to the allowance of the claim after the last permanent total disability application was turned down in 1995."
 {¶ 44} Relator points out that the claim had been allowed for "neurotic depression" in January 1994. Thus, only "major depression and panic disorder" were added to the claim in December 1996 after the denial of the PTD application in October 1995.
 {¶ 45} While relator is correct that the claim had been allowed for "neurotic depression" at the time the first PTD application was denied, it is difficult to see how the SHO's statement constitutes a clear mistake of fact.
 {¶ 46} While it can certainly be argued that the SHO's reference to the "psychiatric conditions" includes "neurotic depression," the SHO's statement can also be viewed as factually correct because the claim was indeed amended after the first PTD application was denied to include "major depression and panic disorder."
 {¶ 47} Even if the SHO was mistaken as to when the claim was allowed for "neurotic depression" it is difficult to see how that prejudices relator.
 {¶ 48} The critical point of the SHO's statement is that disabling psychiatric conditions were added to the claim after the commission's determination on the first PTD application.
 {¶ 49} In short, the commission did not abuse its discretion by denying relator's request for reconsideration.
 {¶ 50} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.