[Cite as *State ex rel. HCR ManorCare, Inc. v. Indus. Comm.*, 2026-Ohio-2271.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State ex rel. HCR ManorCare, Inc.,      :

       Relator,        :

v.       

       :        No. 24AP-729

Industrial Commission of Ohio et al.,

       :        (REGULAR CALENDAR)

       Respondents.        :

---

D E C I S I O N

Rendered on June 16, 2026

---

**On brief:** *Kegler, Brown, Hill & Ritter*, and *Jacob Dobres*, for relator.

**On brief:** *Dave Yost*, Attorney General, and *Justin Marshall*, for respondent Industrial Commission of Ohio.

**On brief:** *Aaron A. Bucco*, for respondent Patricia R. Baesel.

---

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

MENTEL, J.

{¶ 1} Relator, HCR ManorCare, Inc., brought this original action seeking a writ of mandamus ordering respondent, Industrial Commission of Ohio, to vacate its order granting the application of respondent, Patricia R. Baesel, for permanent total disability ("PTD") compensation and issue an order denying her application. Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate. After reviewing the stipulated record and the arguments of the parties, the magistrate has concluded that relator has not demonstrated a clear legal right to the relief it seeks and therefore recommends that we deny the request for a writ of mandamus.

{¶ 2} As explained more fully in the magistrate's decision, Ms. Baesel suffered a back injury in 2011 while working. Although she initially returned to work after the injury, she stopped working altogether in 2021 and applied for PTD on November 21, 2023. A staff hearing officer ("SHO") granted her application for PTD compensation on April 3, 2024, based upon an October 16, 2023 report of Rohn Kennington, M.D., concluding that Ms. Baesel was unable to perform sustained remunerative employment. After the commission denied relator's request for reconsideration, it filed the present action in mandamus. The magistrate recommends denying relator's request for relief.

{¶ 3} Relator poses three objections to the magistrate's decision and recommendation. The first and third objections are interrelated and will be considered together. The first objection states:

> The Magistrate erred by finding that the Commission properly relied upon Dr. Kennington's internally inconsistent medical report that found Claimant's conditions "unstable" yet still somehow adequate to support "permanent" disability.

(Dec. 29, 2025 Objs. at 5.)

{¶ 4} The third objection states:

> The Magistrate erred by reading into the Commission's PTD order the view that Dr. Kennington's discussion of Claimant's alleged frequent visits with her providers only impacted an analysis of vocational rehabilitation and not her overall medical instability or workability.

*Id*. at 12.

{¶ 5} Relator argues that Dr. Kennington's report is internally inconsistent because his assessment that Ms. Baesel's "conditions remain unstable and she requires frequent visits with her various providers" is incompatible with a claimant being permanently disabled. (Oct. 16, 2023 Independent Medical Examination of Rohn T. Kennington, M.D., hereinafter "Kennington Report.") In relator's view, Dr. Kennington's description contradicts the regulatory definition of maximum medical improvement. The regulation provides:

> "Maximum medical improvement" is a treatment plateau (static or well-stabilized) at which no fundamental functional or physiological change can be expected within reasonable medical probability in spite of continuing medical or rehabilitative procedures. An injured worker may need supportive treatment to maintain this level of function.

Adm.Code 4121-3-32(A)(1).

{¶ 6} Both the SHO and the magistrate addressed this purported inconsistency. The SHO's order specifically stated:

> Although Dr. Kennington mentioned the Injured Worker's need to attend medical appointments and inability to do full-time work, this was in the context of his opinion whether vocational rehabilitation would be of benefit, not regarding her physical ability to perform sustained remunerative employment. Thus, this allegedly erroneous analysis regarding the non-medical disability factor of vocational rehabilitation is not relevant as the decision herein is based solely upon the Injured Worker's medical disability.

(Apr. 3, 2024 Order at 2.)

{¶ 7} The magistrate rejected relator's argument, citing *State ex rel. Manpower of Dayton v. Indus. Comm. of Ohio*, 2015-Ohio-2650, ¶ 47 (10th Dist.), to state that if "a physician's medical and vocational commentaries can be separated, the commission may disregard the physician's superfluous opinions on vocational matters and accept the purely medical opinion." (Mag.'s Decision at 13.) The magistrate is correct as a matter of law and its application to the facts of this case. Dr. Kennington's report stated that Ms. Baesel "cannot participate in *vocational rehabilitation or retraining* since her conditions remain unstable and she requires frequent visits with her various providers, which renders her unable to perform productive labor for a full work schedule," but his conclusion that Ms. Baesel was "unable to perform sustained remunerative employment" was "based *solely* on the allowed conditions" of the claim. (Emphasis added.) (Kennington Report at 2.) This court has stated that "when it is clear from the doctor's report that he or she rendered a medical opinion based solely on the allowed conditions, the commission may rely on the medical opinion while ignoring any superfluous vocational opinion offered by the doctor." *State ex rel. DaimlerChrysler Corp. v. Bilbao*, 2005-Ohio-2802, ¶ 4 (10th Dist.). Dr. Kennington's assessment of Ms. Baesel's ability to participate in vocational rehabilitation was, as the SHO stated, not relevant to the analysis resulting in the finding that she is permanently disabled.

{¶ 8} For the same reason, Dr. Kennington's report was not internally inconsistent. His reasons for finding that Ms. Baesel was unable to perform sustained remunerative employment differed from those supporting the "superfluous vocational opinion" that

relator cites. *Id.* This is not a case where "two very different opinions of [the claimant's] disability emerge" from the doctor's report. *State ex rel. Honda of Am., Mfg.*, 2017-Ohio-8972, ¶ 23 (10th Dist.) (holding that internally inconsistent report indicating both that "claimant can perform part-time 'in a work situation' " and that "claimant cannot perform sustained remunerative employment" was not some evidence upon which the commission could rely when granting PTD). As the SHO and the magistrate noted, the vocational opinion played no part in the SHO's decision.

{¶ 9} Finally, relator argues that Dr. Kennington's assessment that Ms. Baesel "cannot participate in vocational rehabilitation or retraining since her conditions remain unstable and she requires frequent visits with her various providers, which renders her unable to perform productive labor for a full work schedule" was not only incorrect as a matter of fact, but also demonstrates that he did rely on findings that her condition was unstable and that she saw providers frequently to conclude that she was unable to perform sustained remunerative employment. (Objs. at 9; Kennington Report at 2.) We do not read the final subordinate clause of the sentence to relate to her inability to perform sustained remunerative employment, which was "based solely on the allowed conditions" of Ms. Baesel's claim. (Kennington Report at 2.) Rather, Dr. Kennington's observation is that a consequence of Ms. Baesel's inability to participate in vocational or retraining was that she would not be able to work in the future. The observation is unremarkable but independent of the medical reason for Dr. Kennington's finding of permanent disability. As mentioned, her inability to participate in vocational rehabilitation, was "superfluous" and the SHO expressly disavowed any reliance on this statement when granting PTD. *DaimlerChrysler Corp.* at ¶ 4. We find it superfluous as well, and therefore overrule the first and third objections.

{¶ 10} Relator's second objection states:

> The magistrate erred by finding that the Commission properly relied upon Dr. Kennington's report when he based his PTD opinion on Claimant's reported limitations rather than upon his physical examination findings.

(Objs. at 7.)

{¶ 11} Relator asserts that Dr. Kennington relied upon Ms. Baesel's "self-report" that she "cannot sit or stand for more than 10 minutes," not from any "physical examination findings." *Id.* Dr. Kennington's report does state, in its "History and Mechanism of Injury,"

that Ms. Baesel "reports constant low back pain with radiation of pain and numbness into the right leg," and that the "symptoms are worse with any sitting/standing for more than 10 minutes at a time before she needs to change positions." (Kennington Report at 1.)

{¶ 12} However, on the second page of Dr. Kennington's report, following the caption "Physical Examination," Dr. Kennington catalogs the findings of the physical exam, which include the following:

> The injured worker ambulate[d] with a mildly antalgic gait, favoring her right leg. She is able to transfer from sitting to standing, and onto and off of the exam table, with mild difficulty. Range of motion testing for the lumbosacral spine reveals some painful and decreased range of motion . . . There is diffuse tenderness to palpation across the lumbosacral spine region. Inspection of the back reveals multiple well-healed surgical scars.

(Kennington Report at 2.)

{¶ 13} In addition, Dr. Kennington's neurological examination revealed "decreased sensation to light touch" in a portion "of the right lower extremity in the L5/S1 nerve root distribution." *Id.* He describes the extent of Ms. Baesel's "[d]eep tendon reflexes," the results of "[s]traight leg raise testing," and the results of "[s]trength testing" that he performed. *Id.* The references to palpation, inspection, testing, and sensitivity to touch indicate that Dr. Kennington did not only rely on Ms. Baesel's self-reporting of symptoms, as relator argues, and made multiple findings based on the physical exam that were germane to his ultimate conclusion.

{¶ 14} Relator criticizes Dr. Kennington for failing to "mention, or consider, his physical exam findings" in the report's final section, where he concludes that Ms. Baesel is permanently disabled, and claims that there he is only "parroting" her self-report of being unable to sit or stand for longer than ten minutes at a time. (Objs. at 8.) Dr. Kennington actually states: "She cannot sit/stand for periods of time greater than 10 minutes, nor is she able to climb/crawl/kneel/squat." (Kennington Report at 2.) He does not state that this part of his conclusion is based solely on Ms. Baesel's self-reported symptoms or that he ignored the physical exam findings before reaching this conclusion, as relator suggests. Furthermore, he describes physical limitations beyond what Ms. Baesel reported. Given that his conclusion immediately follows the physical examination findings, the failure to immediately reference them again is immaterial and relator's suggestion that he ignored

them is implausible.  When Dr. Kennington's report is read as a whole, instead of isolating portions of it to create unsupported inferences, it is some evidence upon which the commission could properly rely to determine that Ms. Baesel was permanently disabled. The second objection is overruled.

{¶ 15} "To be entitled to the extraordinary remedy of mandamus, a relator must establish a clear legal right to the relief requested, a clear legal duty on the part of the bureau to provide the relief, and the lack of an adequate remedy in the ordinary course of the law." *State ex rel. Aaron's, Inc. v. Ohio Bur. of Workers' Comp.*, 2016-Ohio-5011, ¶ 18, citing *State ex rel. GMC v. Indus. Comm.*, 2008-Ohio-1593, ¶ 9.  We agree with the magistrate that relator has shown no right to the relief requested, and that some evidence supported the commission's order granting Ms. Baesel's application for PTD compensation. Accordingly, we adopt the decision of the magistrate in full and deny the petition for a writ of mandamus.

*Writ of mandamus denied.*

BEATTY BLUNT and EDELSTEIN, JJ., concur.

————————————

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. HCR ManorCare, Inc., | : | |
| Relator, | : | |
| v. | : | No.  24AP-729 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on December 15, 2025

*Kegler*, *Brown*, *Hill & Ritter*, and *Jacob Dobres*, for relator.

*Dave Yost*, Attorney General, and *John Smart*, for respondent Industrial Commission of Ohio.

*Aaron A. Bucco*, for respondent Patricia R. Baesel.

IN MANDAMUS

{¶ 16} Relator, HCR ManorCare, Inc. ("employer"), has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to reverse its decision that granted the application for permanent total disability ("PTD") filed by respondent, Patricia R. Baesel ("claimant") and to issue an order denying claimant's application for PTD.

Findings of Fact:

{¶ 17}  1. On November 22, 2011, claimant was injured in the course and scope of her employment with the employer, when she bent down to care for a patient and suffered sudden pain in her lower back. She filed a worker's compensation claim, and her claim was allowed for lumbosacral strain, herniated disc L5-S1, and bilateral sacroiliitis.

{¶ 18}  2. Claimant returned to work following her injury but stopped working in any capacity in 2021.

{¶ 19}  3. On October 16, 2023, Rohn T. Kennington, M.D., examined claimant and subsequently issued a report, in which he found the following: (1) claimant ambulates with a mildly antalgic gate; (2) she can transfer from sitting to standing and on and off the exam table with mild difficulty; (3) she has decreased range of motion and pain in her lumbosacral spine; (4) she has tenderness across the lumbosacral spine; (5) she reports that her symptoms of low back pain with radiation of pain and numbness into the right leg are worse with any sitting/standing for more than about 10 minutes at a time before changing positions; (6) in the doctor's medical opinion, based solely on the allowed conditions in the claim, and the significantly debilitating nature of the conditions, claimant is unable to perform sustained remunerative employment; (7) claimant cannot participate in vocational rehabilitation or retraining since her conditions remain unstable, and she requires frequent visits with her various providers, which renders her unable to perform productive labor for a full work schedule; (8) she cannot sit/stand for periods greater than 10 minutes; (9) she cannot climb/crawl/kneel/squat; (10) she is unable to perform even sedentary level work; and (11) claimant is permanently and totally disabled from all forms of employment.

{¶ 20}  4. On November 21, 2023, claimant filed an application for PTD compensation.

{¶ 21}  5. In a January 15, 2024, Independent Medical Evaluation ("IME") report, Michael Rozen, M.D., found the following: (1) claimant is unable to return to her former position of employment with employer; (2) claimant is capable of sustained remunerative employment in a sedentary physical demand level category but should be afforded the opportunity to change positions if the need arises; (3) in a sedentary work environment, she should refrain from lifting, pushing, and pulling when standing; (4) in a seated

position, she can lift up to five pounds frequently and use her hands without impairment; (5) claimant is able to enter data, do desk work, and do computer work; (6) she should be afforded the opportunity to change position as the need requires; (7) she can stand and walk short distances for short periods, less than 15 minutes; (8) she can sit for up to 30 minutes and then should be afforded an opportunity to shift or change position as the need requires; (9) these restrictions are permanent; (10) she is capable of working as a supervisor and managing numerous other employees as long as the work does not involve physically lifting or providing direct patient care; and (11) she has a 34 percent permanent partial whole-person physical impairment.

{¶ 22} 6. In a February 1, 2024, IME report, Steven A. Cremer, M.D., found the following: (1) claimant has reached maximum medical improvement ("MMI"); (2) there is no active treatment plan that would lead to further functional or physiological improvement; (3) there is no further medical expectation or further functional improvement based on the allowed conditions; (4) claimant has a whole person impairment of 28 percent; (5) claimant has impaired ability to sit for more than 30 minutes in one position or walk more than 20 minutes; (6) lifting is limited to 10 pounds occasionally with no lifting from the low or mid-thigh level or above mid-chest level; (7) change of position is required every 20 to30 minutes; (8) walking should be limited to 20 minutes 3 to 4 times per day; and (9) claimant is capable of sedentary work with change of position from seated to standing every 20 to 30 minutes.

{¶ 23} 7. In a March 26, 2024, vocational assessment, Janet Kilbane, M.Ed., found the following: (1) claimant is capable of office work, which is a sedentary position, in a medical or non-medical field, as she has directly transferable skills to work in an office in the medical or a non-medical field; (2) claimant testified that she looked into becoming a medical coder in 2018 and was accepted at a school to become a medical coder; however, she did not pursue going to school because she was taking care of her elderly father, and she did not pursue school at a later date because she changed her mind and was no longer interested in that line of work; (3) claimant was vague about her computer skills and could be evaluated through vocational rehabilitation to determine if she would need to update her computer skills to become marketable; (4) other considerations for a return to work would be a stand/sit desk, which are becoming more common everyday desks in offices,

and ergonomic chairs, keyboards, and headsets for the phone are also quite common in an office setting; and (5) claimant is not permanently and totally disabled, and she is capable of sustained remunerative employment.

{¶ 24} 8. After a hearing, a staff hearing officer ("SHO") issued an order on April 5, 2024, granting claimant's application for PTD compensation, in which the SHO found the following: (1) the application for PTD compensation is granted; (2) PTD is awarded from October 16, 2023, to continue without suspension; (3) based upon the October 16, 2023, report of Dr. Kennington, claimant is unable to perform any sustained remunerative employment; thus, it is not necessary to analyze claimant's non-medical disability factors; and (4) Dr. Kennington examined claimant on October 16, 2023, and found she had an antalgic gait favoring the right leg, difficulty transferring on and off the examination table, significantly decreased and painful range of motion of the lumbar spine, diffuse tenderness of the lumbosacral spine, and multiple well-healed scars of the lumbar spine, and he concluded these conditions render claimant permanently and totally disabled; and (5) although Dr. Kennington mentioned claimant's need to attend medical appointments and inability to do fulltime work, this was in the context of his opinion whether vocational rehabilitation would be of benefit, not regarding her physical ability to perform sustained remunerative employment; thus, this allegedly erroneous analysis regarding the non-medical disability factor of vocational rehabilitation is not relevant, as the decision herein is based solely upon claimant's medical disability.

{¶ 25} 9. The employer filed a request for reconsideration, which the commission denied on May 8, 2024.

{¶ 26} 10. On December 10, 2024, the employer filed the instant mandamus action, requesting that this court issue writs of mandamus ordering the commission to reverse its decision that granted the claimant's application for PTD and issue an order denying claimant's application for PTD.

Conclusions of Law and Discussion:

{¶ 27} The magistrate recommends that this court deny the employer's petition for a writ of mandamus.

{¶ 28} In order for this court to issue a writ of mandamus, a relator must ordinarily show a clear legal right to the relief sought, a clear legal duty on the part of the respondent to provide such relief, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967).

{¶ 29} A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order that is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 30} "[T]he purpose of permanent and total disability benefits is to compensate injured persons for impairment of earning capacity." *State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167, 170 (1987), citing *State ex rel. General Motors Corp. v. Indus. Comm.*, 42 Ohio St.2d 278 (1975). Payment of PTD compensation is inappropriate when there is evidence of (1) actual sustained remunerative employment, (2) the physical ability to do sustained remunerative employment, or (3) activities so medically inconsistent with the disability that they impeach the medical evidence underlying the award. *State ex rel. Lawson v. Mondie Forge*, 2004-Ohio-6086, ¶ 16. "Permanent total disability is the inability to do any sustained remunerative work." *State ex rel. Schultz v. Indus. Comm.*, 2002-Ohio-3316, ¶ 61. "Work is 'sustained' if it consists of an ongoing pattern of activity." *State ex rel. Bonnlander v. Hamon*, 2017-Ohio-4003, ¶ 15. "[W]ork need not be regular or daily" to qualify as sustained. *Id.* "[I]ntermittent and occasional" or "part-time" work may qualify. *Id.*

{¶ 31} In the present case, the employer argues the following: (1) Dr. Kennington does not indicate that claimant is unable to perform sustained remunerative employment based upon the physical examination findings; instead, he appears to accept claimant's report that she can only sit or stand for 10 minutes at a time and only drive for short distances; (2) Dr. Kennington states that his opinion as to claimant's ability to work is solely based on the allowed conditions and does not state that it is based on his

examination findings; (3) Dr. Rozen's and Dr. Cremer's conclusions are specifically based on their examination and review of the medical records; (4) Dr. Kennington's statement that claimant cannot participate in vocational rehabilitation because her condition is unstable and she requires frequent visits with her providers is contrary to the evidence that claimant's conditions had reached MMI and claimant's testimony that she stopped treatment in September 2023; (5) the commission failed to properly consider and apply the legal definition for the ability to perform sedentary work because claimant appears capable of combining her abilities to sit, stand, and walk to work a part-time job, which still constitutes sustained remunerative employment; and (6) the commission erred by failing to consider claimant's non-medical factors, all of which support that she is capable of performing sustained remunerative employment.

{¶ 32} With regard to the employer's first, second, and third arguments, the magistrate finds no abuse of discretion. The employer first argues that Dr. Kennington does not indicate that claimant is unable to perform sustained remunerative employment based upon the physical examination findings and, instead, merely accepts claimant's self-opinion that she can only sit or stand for 10 minutes at a time and only drive for short distances. In its second argument, the employer claims that Dr. Kennington states that his opinion as to claimant's ability to work is solely based on the allowed conditions and does not state that it is based on his examination findings. However, in fact, Dr. Kennington indicates in his report that he both interviewed and examined claimant. In the section entitled "Physical examination," Dr. Kennington found that claimant ambulates with a mildly antalgic gate; can transfer from sitting to standing and on and off the exam table with mild difficulty; has decreased range of motion and pain in her lumbosacral spine; and has tenderness across the lumbosacral spine. Based upon this physical examination, Dr. Kennington opined that claimant cannot sit/stand for periods greater than 10 minutes and cannot climb/crawl/kneel/squat. It is clear from Dr. Kennington's report that his conclusions as to the ability to do sedentary level work and the ultimate PTD determination were based upon his examination results and not merely upon claimant's subjective complaints. These two arguments, therefore, are without merit. Given this conclusion, that Dr. Rozen's and Dr. Cremer's conclusions are also based on their physical examination of claimant is irrelevant, as the commission was within its discretion to rely upon Dr. Kennington's report rather than Dr. Rozen's and

Dr. Cremer's reports. *See, e.g., State ex rel. Shambaugh v. Indus. Comm.*, , 2011-Ohio-3556, ¶ 15 (10th Dist.) (the commission has the exclusive authority to weigh the evidence and credibility; thus, it is within the discretion of the commission to determine which medical reports are more credible and should be relied upon). Thus, the employer's third argument is also without merit.

{¶ 33} In its fourth argument, the employer asserts that Dr. Kennington's statement that claimant cannot participate in vocational rehabilitation because her condition is unstable and she requires frequent visits with her providers is contrary to the evidence that claimant's conditions had reached MMI and claimant's testimony that she stopped treatment in September 2023. However, the SHO addressed this issue. The SHO found that although Dr. Kennington mentioned claimant's need to attend medical appointments and inability to do fulltime work, this was in the context of his opinion whether vocational rehabilitation would be of benefit, not regarding her physical ability to perform sustained remunerative employment; thus, this allegedly erroneous analysis regarding the non-medical disability favor of vocational rehabilitation is not relevant, as the decision herein is based solely upon claimant's medical disability. Where a physician's medical and vocational commentaries can be separated, the commission may disregard the physician's superfluous opinions on vocational matters and accept the purely medical opinion. *State ex rel. Manpower of Dayton, Inc. v. Indus. Comm. of Ohio*, 2015-Ohio-2650, ¶ 47 (10th Dist.) (Magistrate's Decision), *aff'd*, 2016-Ohio-7741, citing *State ex rel. Ohio State Univ. v. Allen*, 2004-Ohio-3839, ¶ 18 (10th Dist.), citing *State ex rel. Catholic Diocese of Cleveland v. Indus. Comm.*, 1994-Ohio-392. Therefore, the employer's fourth argument is without merit.

{¶ 34} In its fifth argument, the employer asserts that the commission failed to properly consider and apply the legal definition for the ability to perform sedentary work because claimant appears capable of combining her abilities to sit, stand, and walk to work a part-time job, which still constitutes sustained remunerative employment. It is true that an individual can engage in sustained remunerative employment if they can perform sedentary work. *State ex rel. Miller v. Indus. Comm. of Ohio*, 2014-Ohio-1742, ¶ 10 (10th Dist.). It is also true that part-time work may qualify as sustained remunerative employment. *See State ex rel. Bonnlander* at ¶ 15. Furthermore, where a claimant is

capable of working more than four hours per day by combining his or her abilities to sit, stand, and walk, the commission may find that the worker is capable of sustained remunerative employment. *State ex rel. DeSalvo v. May Co.*, 2000-Ohio-313.

{¶ 35} However, here, in its argument, the employer does not explain how it appears that claimant is capable of combining her abilities to sit, stand, and walk to work a part-time job. Adm.Code 4121-3-34(B)(2)(a) defines "sedentary work" as follows:

> (a) "Sedentary work" means exerting up to ten pounds of force occasionally (occasionally: activity or condition exists up to one-third of the time) and/or a negligible amount of force frequently (frequently: activity or condition exists from one-third to two-thirds of the time) to lift, carry, push, pull, or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

Adm.Code 4121-3-34 (B)(2)(a).

{¶ 36} In his report, Dr. Kennington's finding regarding claimant's ability to sit/stand is inconsistent with sedentary employment, as defined by Adm.Code 4121-3-34(B)(2)(a). Dr. Kennington found claimant cannot sit/stand for periods greater than 10 minutes. According to Adm.Code 4121-3-34(B)(2)(a), sedentary work involves sitting most of the time. Claimant's inability to sit for longer than 10 minutes at a time supports a finding that claimant's restrictions are so limiting that no sedentary work is feasible, as any brief periods of possible work activity would not constitute sustained remunerative employment. *See generally State ex rel. Freedom Ctr. v. Indus. Comm. of Ohio*, 2024-Ohio-1376, ¶ 13 (10th Dist.), quoting *State ex rel. Owens Corning Fiberglass v. Indus. Comm.*, 2004-Ohio-3841, ¶ 56 (10th Dist.) (finding when a physician sets forth functional capacities so limited that no sedentary work is really feasible (such as an inability to sit for more than 30 minutes), then the commission does not have discretion to conclude based on that report that the claimant can perform sustained remunerative work of a sedentary nature); and *State ex rel. Howard v. Millennium Inorganic Chems.*, 2004-Ohio-6603, ¶ 9 (10th Dist.), quoting *State ex rel. Clevite Elastomers v. Torok*, 2002-Ohio-4770, ¶ 14 (10th Dist.). Therefore, the employer's argument is without merit.

{¶ 37} In its sixth argument, the employer argues that the commission erred by failing to consider claimant's non-medical factors, all of which support that she is capable of performing sustained remunerative employment. However, the magistrate has found that there was some evidence to support a finding that claimant was incapable of sustaining any remunerative employment. If the impairment prohibits the injured worker from performing any sustained remunerative employment, the commission must find that the injured worker is permanently and totally disabled without the consideration of the non-medical factors. *See* Adm.Code 4123-3-34(D)(2)(a) and (b). Therefore, the employer's sixth argument is without merit.

{¶ 38} Accordingly, it is the magistrate's recommendation that this court should deny the employer's petition for writ of mandamus.

/S/ MAGISTRATE
THOMAS W. SCHOLL III

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b). A party may file written objections to the magistrate's decision within fourteen days of the filing of the decision.